ROOSEVELT WILLIAMS *v.* STATE OF INDIANA.

[No. 974S186.  Filed June 17, 1976.]

*James R. Bielefeld,* of Crown Point, for appellant.

*Theodore L. Sendak,* Attorney General, *Robert E. Dwyer,* Deputy Attorney General, for appellee.

DEBRULER, J.—Appellant, Roosevelt Williams, was indicted for Murder in perpetration of a robbery, Ind. Code § 35-13-4-1, Burns § 10-3401 (1956). In a trial by jury, appellant was found guilty as charged and sentenced to life imprisonment. He appeals on three grounds: (1) that the court erred in overruling his motion to suppress his confession, thereby permitting it to be admitted into evidence; (2) that he was denied a fair trial due to the presence of armed, uniformed deputy sheriffs acting as guards in the courtroom during the trial; (3) that the deputy prosecutor was guilty of prejudicial

misconduct when he offered into evidence the entire deposition of a witness on redirect examination.

## I.

We begin by setting out the circumstances of appellant's sixty-eight hour detention preceding his confession: At 7:00 a.m., May 20, 1973, the police were notified that the body of David Pickett had been found near the Welcome Inn, which he owned. That afternoon, about 6:00, a police officer phoned Dennis Moore and asked him to come down to the police station to sign a complaint with regard to a burglary which he and Charles Anderson had seen a Bennie Parker commit. Moore testified that he wanted to report that Darryl James had acted with Parker. At the station, he told the police he had been high and did not want to sign the complaint. The police dismissed the complaint and released Parker.

Then Moore asked the officer about the Pickett murder, and the officer asked him if he knew anything about it. Moore and Anderson said that they did. Separately they made oral and then, written statements. Anderson, who had heard only some of the conversations, corroborated Moore's statements. They explained that about 2:40 a.m., May 20th, they had gone to the Welcome Inn to buy some wine. Appellant had called Moore over and asked him if he wanted to rob the Welcome Inn. Appellant had said that they would have to kill Pickett, because he would recognize them. Appellant said that he would get a gun from Darryl James, who was across the street at the poolroom. When the inn closed, at 3:00 a.m., Moore and Anderson waited while appellant went across the street and, five minutes later, came out of the poolroom with Darryl James. At that point, Moore and Anderson left. At about 3:30 a.m., they heard a shot from their home, five houses from the Welcome Inn.

After making these statements, the men left the police station and went home. The statements were not sworn statements. At 9:00 a.m., May 21st, Detective Arnold read

these statements, and, on the basis of the statements alone, arrested appellant at 3:30 p.m. Arnold testified that he did not try to get an arrest warrant, because he did not have "probable cause to file a case."

Appellant was held sixty-eight hours before he made his first confession. At the time of his arrest, officers read him a version of the *Miranda* warnings. He did not make a statement. The following morning, May 22nd, appellant, two co-conspirators, and the two men who had made the statements to the police were questioned together. In the presence of appellant, the two men agreed to make second statements. Then, the police read appellant a version of the *Miranda* warnings from a waiver form. They questioned him for twenty minutes, but he refused to make a statement.

On May 23rd, the police asked appellant if he would take a polygraph test, and he agreed. He took the test on the morning of May 24th. Afterwards, the police read his rights from the waiver form again. They questioned him, but again he refused to make a statement. Later that day, the police again asked him to make a statement. They told him that the lie detector test showed that he had lied on the test and, also, that one of the co-conspirators had made a statement. He agreed to make a statement and gave a confession, which set out details of a plan to hit Pickett over the head with a pistol and rob him, Larry Bullock's shooting Pickett and taking the money box, and appellant's acting as a lookout and searching Pickett's pants pockets for the keys to his car. Darryl James also acted as a lookout.

After another twenty-three and a half hours of detention, on May 25th, appellant made a second statement substantially the same as the first. This statement was in appellant's own handwriting and followed an unidentified conversation with one of the detectives. Immediately after appellant wrote and signed this statement, the detectives took another statement from him, in which he noted that he had written out the second statement to clarify the location of the shooting. May

26-28th were Saturday, Sunday and a Monday holiday. On May 29th, the police took appellant before a magistrate.

At trial, the judge held a hearing on appellant's motion to suppress his confession. The judge heard Detective Arnold's testimony concerning probable cause, the interrogations, the advisement of rights, the location of the nearest magistrate, etc. He heard appellant on cell conditions, personal health, failure to advise of right to appointed attorney at questioning, etc. The trial judge determined that the arrest was illegal, but that appellant's confession was voluntary. The judge requested cases concerning confessions as the fruit of unlawful arrests. Finally, he admitted the confessions into evidence, based on a determination of voluntariness: what effect the sixty-eight hours of detention had had on appellant's state of mind?

On the basis of this evidence, we find that appellant's confessions should not have been admitted at trial. Appellant was arrested without a warrant and was held for eight days without any judicial determination of probable cause. After sixty-eight hours of this detention, appellant made a confession. After ninety-one hours, he made a second confession. If we assume that the arrest was made with probable cause, contrary to the finding of the trial judge, and if we assume that the confession was made voluntarily, the confession must be suppressed, nevertheless, if it was the product of an illegal detention. The recent United States Supreme Court case, *Brown* v. *Illinois,* (1975) 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416, based on *Wong Sun* v. *United States,* (1963) 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441, mandates that result.

A sixty-eight hour detention is unquestionably unlawful. Our statute permitting warrantless arrests reads in relevant part:

"All . . . police officers . . . may arrest and detain any person found violating any law of this state, until a legal warrant can be obtained." Ind. Code § 35-1-21-1 (Burns 1975)

Appellant was arrested at 3:30 p.m., Monday, May 21, 1973. A municipal court is next door to the Gary police station and was open on that date. The police had the opportunity to bring appellant before a judge for judicial determination of probable cause, advisement of rights, and appointment of an attorney within the hour. Instead, the police had already held appellant for sixty-eight hours at the time of his first confession.

In *Brown,* the petitioner was arrested without probable cause, taken to the police station, and advised of his *Miranda* rights. Within less than two hours of his arrest, he made a confession. The police drove him around Chicago in search of his co-defendant, confronted him with the co-defendant, and, after being advised of his *Miranda* rights again, he once again confessed. Fourteen hours after the arrest, he was taken before a magistrate.

The Supreme Court noted that the exclusionary rule was applied in *Wong Sun, supra,* primarily to protect Fourth Amendment rights.

> "Protection of the Fifth Amendment right against self-incrimination was not the Court's paramount concern there. To the extent that the question whether Toy's statement was voluntary was considered, it was only to judge whether it 'was *sufficiently* an act of free will to purge the primary taint of the unlawful invasion.' 371 U.S., at 486, 83 S.Ct. at 416 (emphasis added.)" 95 S.Ct. at 2259.

And, the Court emphasized that the exclusionary rule protected Fourth Amendment guarantees in two respects: by deterring lawless searches and arrests and by excluding from courts evidence obtained unconstitutionally.

In *Brown,* as in *Wong Sun,* the issue was, whether the petitioner's statements were obtained by exploitation of the illegal Fourth Amendment violations. The heart of the Court's analysis is in two paragraphs:

> "Although, almost 90 years ago, the Court observed that the Fifth Amendment is in 'intimate relation' with the Fourth, Boyd v. United States, 116 U.S. 616, 633, 6 S.Ct. 524, 533,

29 L.E. 746 (1886), the *Miranda* warnings thus far have not been regarded as a means either of remedying or deterring violations of Fourth Amendment rights. Frequently, as here, rights under the two Amendments may appear to coalesce since 'the "unreasonable searches and seizures" condemned in the Fourth Amendment are almost always made for the purpose of compelling a man to give evidence against himself, which in criminal cases is condemned in the Fifth Amendment.' *Ibid.;* see Mapp v. Ohio, 367 U.S., at 646 n. 5, 81 S.Ct. at 1687. The exclusionary rule, however, when utilized to effectuate the Fourth Amendment, serves interests and policies that are distinct from those it serves under the Fifth. It is directed at all unlawful searches and seizures, and not merely those that happen to produce incriminating material or testimony as fruits. In short, exclusion of a confession made without *Miranda* warnings might be regarded as necessary to effectuate the Fifth Amendment, but it would not be sufficient fully to protect the Fourth. *Miranda* warnings, and the exclusion of a confession made without them, do not alone, sufficiently deter a Fourth Amendment violation.

Thus, even if the statements in this case were found to be voluntary under the Fifth Amendment, the Fourth Amendment issue remains. In order for the causal chain, between the illegal arrest and the statements made subsequent thereto, to be broken, *Wong Sun* requires not merely that the statement meet the Fifth Amendment standard of voluntariness but that it be 'sufficiently an act of free will to purge the primary taint.' 371 U.S. at 486, 83 S.Ct. at 416. *Wong Sun* thus mandates consideration of a statement's admissibility in light of the distinct policies and interests of the Fourth Amendment." 95 S.Ct. at 2260-1 (Footnote omitted.)

The Court noted that persons arrested illegally (or, in our case, detained illegally) may decide to confess, as an act of free will unaffected by the initial illegality. And, ▆▆ the determination, whether the confession is the product of free will under *Wong Sun,* is dependent entirely on the facts of the particular case. However, the Court went on to suggest four relevant factors: (1) whether the individual was informed of his rights as required by *Miranda,* (2) the temporal promixity of the arrest and the confession, (3) the presence of intervening circumstances,

and (4) "particularly, the purpose and flagrancy of the official misconduct." Further, "the voluntariness of the statement is a threshhold [sic] requirement. And the burden of showing admissibility rests, of course, on the prosecution." 95 S.Ct. at 2262 (citations and footnotes omitted).

The Court noted that the trial court had determined that the *Miranda* warning "broke the causal chain so that any subsequent statement, even one induced by the continuing effects of unconstitutional custody, was admissible so long as, in the traditional sense, it was voluntary and not coerced in violation of the Fifth and Fourteenth Amendments." 95 S.Ct. at 2258. Instead of that analysis, the Court undertook the inquiry mandated by *Wong Sun.*

The Court found that Brown had made his first statement less than two hours after his illegal arrest and that there was no intervening event of any significance whatsoever. The Court found the second statement clearly the result and fruit of the first. It further found:

"The illegality here, moreover, had a quality of purposefulness. The impropriety of the arrest was obvious; awareness of that fact was virtually conceded by the two detectives when they repeatedly acknowledged, in their testimony, that the purpose of their action was 'for investigation' or for 'questioning.'" 95 S.Ct. at 2262.

*Brown* v. *Illinois* analysis, in spirit and in detail, applies to this case. Detention beyond a reasonable period necessary to bring a suspect before a magistrate is illegal. Ind. Code § 35-1-21-1, *supra; Nacoff* v. *State,* (1971) 256 Ind. 97, 267 N.E.2d 165. Another statute, Ind. Code § 35-5-5-3 (Burns 1975), reads:

"In any criminal prosecution by the state of Indiana, a confession made or given by a person who is a defendant therein, while such person was under arrest or other detention in the custody of any law enforcement officer or law enforcement agency, shall not be inadmissible solely because of the delay in bringing such person before a judge if such confession is found by the trial judge to have been made voluntarily and if the weight to be given the confes-

sion is left to the jury and if such confession was made or given by such person within six [6] hours immediately following his arrest or other detention:

> Provided, That the time limitation contained in this section shall not apply in any case in which the delay in bringing such person before a judge beyond such six [6] hour period is found by the trial judge to be reasonable, considering the means of transportation and the distance to be traveled to the nearest available judge."

Thus, in Indiana, delay beyond six hours, if it does not make a confession inadmissible as a matter of law (See *Apple* v. *State,* [1973] 158 Ind. App. 663, 304 N.E.2d 321, but compare *Crawford* v. *State,* [1973] 156 Ind. App. 693, 298 N.E.2d 22), at least alerts a court to the probable illegality of the detention. We can safely state that the sixty-eight hours without taking appellant before a judge was illegal detention in violation of the Fourth Amendment.

Considering the facts of this case in light of the *Brown* criteria for determining whether a confession is an act of free will or a product of the continued detention, we find that no time intervened between the illegal detention and the confession, and no circumstance intervened which might have made the confession an independent act of free will. The Supreme Court set out an example of a significant lapse of time and intervening circumstances:

> "The situation here is thus in dramatic contrast to that of Wong Sun himself. Wong Sun's confession, which the Court held admissible, came several days after the illegality, and was preceded by a lawful arraignment and a release from custody on his own recognizance." 95 S.Ct. at 2262 n. 11.

The second confession here was as clearly a result of the first, which appellant would have believed to be admissible against him, as was the second confession in *Brown.*

In *Brown,* the Court accepted the *Miranda* rights as complete. Here, neither version of the *Miranda* rights which the police read to appellant clearly set out the right to have ap-

pointed counsel prior to any questioning. Nor did the police ever make any explanation of the *Miranda* rights, which might have clarified this right. *Rowe* v. *State*, (1974) 262 Ind. 250, 314 N.E.2d 745; *Goodloe* v. *State*, (1969) 253 Ind. 270, 252 N.E.2d 788. Detective Arnold testified that he had never successfully made arrangements for a suspect to have counsel appointed before questioning, that he had no means whatsoever of providing an attorney for appellant, and that all he could do, if appellant had understood and had asked for an attorney, was to give him a phone book and a phone. This is not adequate response to a request for an attorney. *Pirtle* v. *State*, (1975) 263 Ind. 16, 323 N.E.2d 634. If a member of the Police Department believes that he cannot take any steps toward getting the courts to appoint an attorney before questioning, it is unlikely that he has any interest in being certain that a suspect understands that he has that right.

The last factor is the purpose and flagrancy of the police misconduct. The testimony in this case, as in *Brown,* indicated a police intention to arrest and detain for investigation and questioning. At the hearing on the motion to suppress, Detective Arnold testified that he did not seek a warrant because he did not have probable cause to file a case at that time. In the presence of the jury, Arnold stated he did not attempt to get an arrest warrant because he didn't believe they had enough evidence at that time. He had probable cause in his own mind but not in standing before a judge. After arresting appellant, Arnold did not take him before a magistrate because he did not feel he had probable cause. After appellant's confession, he had probable cause.

Absent this frank testimony, the passage of sixty-eight hours alone would be significant indication of flagrant misconduct. A purpose to secure a confession would be clear from the very short, but daily, interrogations; the confrontation of appellant with the informants who, in his presence, agreed to make second statements; the lie detector test administered to appellant, the results of which were interpreted for him as

showing that he had lied on the test; and the fact that the police told appellant a co-defendant had made a statement. This was not a case where the police put someone in a cell and accidentally forgot him for four days. The continued detention before presentment to a judge was for the purpose of eliciting a confession.

*Brown* would require us to hold the confession inadmissible. It was the product of an unreasonable detention. For that reason, if we uphold the trial judge's finding that the confession was made voluntarily, without compulsion, threat, or promise, within the strictures of the Fifth Amendment, still we must insist that it not be admitted because of the sixty-eight hour detention in violation of the Fourth Amendment.

The trial judge requested counsel to provide him with cases where the confessions were fruits of poisoned arrests. Clearly *Wong Sun* and *Brown* would have permitted the trial court to find that this confession, like a confession resulting from an illegal search, was the product of the detention and should have been suppressed.

In another recent United States Supreme Court case, *Gerstein* v. *Pugh,* (1975) 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54, the Court emphasized the importance of a prompt judicial determination of probable cause.

> "To implement the Fourth Amendment's protection against unfounded invasions of liberty and privacy, the Court has required that the existence of probable cause be decided by a neutral and detached magistrate whenever possible. . . .
>
> Maximum protection of individual rights could be assured by requiring a magistrate's review of the factual justification prior to any arrest, but such a requirement would constitute an intolerable handicap for legitimate law enforcement. . . .
>
> Under this practical compromise, a policeman's on-the-scene assessment of probable cause provides legal justification for arresting a person suspected of crime, and for a brief period of detention to take the administrative steps incident to arrest. *Once the suspect is in custody, however,*

*the reasons that justify dispensing with the magistrate's neutral judgment evaporate.* There no longer is any danger that the suspect will escape or commit further crimes while the police submit their evidence to a magistrate. *And, while the State's reasons for taking summary action subside, the suspect's need for a neutral determination of probable cause increases significantly. The consequences of prolonged detention may be more serious than the interference occasioned by arrest.* Pretrial confinement may imperil the suspect's job, interrupt his source of income, and impair his family relationships. . . . When the stakes are this high, the detached judgment of a neutral magistrate is essential if the Fourth Amendment is to furnish meaningful protection from unfounded interference with liberty. Accordingly, we hold that the Fourth Amendment requires a judicial determination of probable cause as a prerequisite to extended restraint on liberty following arrest." (Emphasis added.) 95 S.Ct. 862-63.

Here, we had precisely the situation to which the Court refers. Appellant, assumed innocent by law, was held at the will of the police. The present United States Supreme Court is concerned with protecting citizens from illegal procedures which insulate arrested persons from judicial safeguards. It is at that point, especially, that innocent persons whose rights are never litigated may be treated unconstitutionally by the police.

Consistent with *Brown* v. *Illinois,* we reverse and remand for a new trial at which appellant's confessions are not admitted into evidence. Because the other issues raised by appellant may be problems in a new trial, we will discuss them also.

## II.

Appellant argues that he was denied a fair trial because the trial court permitted armed, uniformed deputy sheriffs to stand in the courtroom. At trial, immediately after the jury had been sworn, instructed and excused, appellant and his co-defendant, Larry Bullock, moved that the court discharge the uniformed deputies because their presence would give the jurors the impression that the defendants were dangerous. Most of the jurors had served in trials in the same

courtroom in the preceding months when no guards were present.

Having heard this argument, the court denied the motion, explaining its reasoning:

"There is virtually no other way to make the Court room secure viewing the many access routes in and out of the Court room itself and the easy accessibility of the entrance and/or exit. I see no other alternative.

As you well know, I consulted with the employees of the Court for alternative means of providing security for the Court room and they revealed that this is the best solution that we can come up with, the uniformed police, plus the open wearing of side arms, in my opinion, may not be prejudicial, but it is the only way that we would obtain security for this Court room. The Sheriff will not provide men under any other circumstances."

At one point during the trial, the judge excused the jury and asked the deputies to "change the guard" only at recesses, as the changes would distract the jury and the parties. At the hearing on the motion to correct errors, appellant noted that the deputies were only ten feet away from the defendants, and that their presence and proximity detracted from the presumption of innocence which prevails throughout the trial. The court noted that, when the court directed a verdict for appellant's co-defendant and released him, the deputies also were dismissed.

The trial court must determine the necessity for security measures. To permit appellate review, the judge should make a record of the arguments and his reason for permitting guards beyond those customarily employed. In this case, the court heard argument and, based on the fact that there were many access routes in and out of the courtroom, which were easily accessible, determined that armed deputies near the defendants were the best solution. He noted also that, in contrast to previous trials, these defendants had not been out on bail (so that their presence at trial did not indicate that they would not attempt escape or

further harm.) Finally, appellant and his co-defendant were charged with felony-murder. The seriousness of the offense and the ease of access were adequate reasons for the court's decision to request armed deputies.

### III.

Appellant argues that the prosecutor acted improperly and prejudicially when he offered into evidence, on redirect, the entire deposition of a witness, for the purposes of rehabilitating that witness and putting into context the five quotations orally read into the record on cross-examination by defense counsel for appellant Williams and the one quotation read into the record on cross-examination by defense counsel for defendant Bullock. The prosecutor's motion on redirect of that witness was as follows:

> "I believe at this time your Honor, the State would simply move with respect to the deposition, the transcript of the deposition of this witness that it be entered into evidence not for the purpose of proving any facts contained within that deposition but merely for the purpose of putting back in prospective the impeachment, the attempted impeachment of the witness by defense counsels as to put it in context by reading that entire deposition to the jury."

Defendant Bullock's counsel objected, because the request to introduce the deposition was untimely on redirect and the State had laid no foundation for introducing it. Appellant's counsel joined in these objections. Defense counsel made other objections also during continued argument outside the presence of the jury. The court refused to permit the State to introduce the deposition.

The prosecutor's attempted introduction of the deposition was not misconduct on his part. In light of the fact that appellant's counsel had orally used specific answers in the deposition, it was not unreasonable for the prosecutor to attempt to get the written deposition before the jury for the limited purpose of showing the con-

text in which those specific answers were given. If the specific answers, which the witness had admitted giving, were clearly and significantly inconsistent with his court testimony, the trial court legitimately could have permitted the prosecutor to orally use any remaining answers in the deposition which were relevant to place the given specific answers in their proper context. If those answers could be put before the jury in oral questioning, then why not in written form? The position of the prosecutor was arguable and therefore not improper misconduct.

The circumstances of this case distinguish it from *Aubrey* v. *State*, (1974) 261 Ind. 692, 310 N.E.2d 556, relied upon by appellant. There an alleged accomplice refused, in front of the jury, to testify for the State on self-incrimination grounds. He was granted immunity, again refused to testify, and was jailed for contempt. These events naturally would have created a strong implication in the minds of the jurors that the witness' truthful testimony would have incriminated him and the defendant on trial, with whom he was supposedly in league. The defendant there did not know what that witness might have testified to and was otherwise helpless to dispel the implication.

In contrast, in this case, the implication arising in the minds of the jurors from defense counsel's objections to the admission of the statement and the court's rulings would have been substantially dispelled because of the circumstances in which those events occurred. The prosecutor specifically limited his offer to showing the context in which the statements already admitted were made. The effect of appellant's objections to that offer and the court's sustaining his objection was, at most, to permit an inference that the specific statements which the jury had heard would not impeach the witness' testimony if they were put in context. Further offsetting the implication that the deposition contained matter harmful to appellant which the jury had not heard, is the fact that the witness had testified fully for the State, under

questioning by the trial prosecutor, who had the written statement at hand. The likelihood was strong that any incriminating matter which the witness knew would already have been brought out to its fullest under questioning on direct examination. Under the circumstances of this case, the attempted introduction of the written statement was not prejudicial misconduct and did not serve to deny appellant a fair trial.

The conviction is reversed and the case remanded for a new trial, at which appellant's confessions may not be admitted.

Prentice, J., concurs; Hunter, J., concurs with separate opinion; Givan, C.J., dissents with opinion in which Arterburn, J., concurs.

### CONCURRING OPINION

HUNTER, J.—Appellant was arrested without a warrant and without probable cause. His arrest violated the Fourth Amendment. After his arrest, appellant confessed. The trial court found that appellant's confession was voluntary and was not procured in violation of the Fifth Amendment. As *Brown* v. *Illinois*, (1975) 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416, made clear, a finding that the Fifth Amendment has not been violated in obtaining a confession does not render a confession admissible if it appears that the confession was made possible by and was the product of an illegal arrest. In determining whether a confession is a product of an illegal arrest, *Brown* instructs us to consider the temporal proximity of the arrest and the confession, the presence of intervening circumstances and the purpose and flagrancy of official misconduct.

In *Brown,* the initial inculpatory statement came within an hour and a half of Brown's illegal arrest. Here, appellant's first statement was far removed from the illegal arrest, occurring some sixty-eight hours later. Theoretically, as the time span between the arrest and the statement increases, the taint of the bad arrest decreases. The factor of temporal proximity is much weaker here than in *Brown.*

Intervening circumstances which may neutralize the taint of an illegal arrest include significant breaks in custodial interrogation, release from custody on bail or recognizance, consultation with an attorney, and presentment before a magistrate for determination of probable cause. *See Johnson* v. *Louisiana,* (1972) 406 U.S. 356, 92 S.Ct. 1620, 32 L.Ed.2d 152, and cases cited in n. 8, *Brown, supra.* Chief among these circumstances is the probable cause hearing. Appellant, like Brown, was not taken before a magistrate until after his confession had been extracted.

Purpose and flagrancy of the official misconduct is at least as galling here as in *Brown.* This case presents a specific example of Gary police procedures which were recently condemned and barred by an order of the federal District Court for the Northern District of Indiana in *Dommer* v. *Hatcher,* (1975) 48 Ind. Dec. 1996. Appellant was arrested without probable cause and held precisely for the purpose of producing information which would sustain a finding of probable cause so that appellant might be taken before a magistrate. This procedure was an intentional, flagrant violation of appellant's Fourth Amendment rights.

Taken as a whole, the foregoing analysis of *Brown* guidelines demonstrates that appellant's confession was not an act of free will unaffected by his illegal arrest. For the reasons stated in *Brown,* appellant's confession must be excluded on remand.

I agree with the majority that the Fourth Amendment and *Gerstein* v. *Pugh,* (1975) 420 U.S. 103, 95 S.Ct. 854, 43 L. Ed.2d 54, require a reasonably prompt judicial determination of probable cause *prior* to extended restraint following an arrest. I also agree that under the facts of this case, appellant's detention for sixty-eight hours without a judicial determination of probable cause violated his Fourth Amendment rights. I join in reversal, however, solely on the basis of *Brown.* I find *Gerstein* to be applicable only when "a police-

man's on-the-scene assessment of probable cause provides legal justification for arresting a person suspected of crime." 420 U.S. 103, 113-14, 95 S.Ct. 854, 863, 43 L.Ed.2d 54, 65. Here, we are confronted with the officer's candid admission that no good faith on-the-scene assessment of probable cause could be made. Such admission places this case in the posture of *Brown* where the arrest is without on-the-scene probable cause, not in the posture of *Gerstein* where the arrest is with on-the-scene probable cause, but there follows an excessive delay in confirmation of the on-the-scene probable cause by independent judicial authority. Thus, I find it wholly unnecessary to synthesize *Brown* and *Gerstein*, as the majority does, to remedy a delay in presentment following an invalid arrest.

### DISSENTING OPINION

GIVAN, C.J.—I dissent from the majority opinion in this case. I agree with the statements of law in the majority opinion. The majority concedes that although persons may be illegally arrested or illegally detained, they nonetheless may decide to confess as an act of free will unaffected by the illegality of their arrest or confinement. The majority also recites the fact that the trial judge conducted a hearing as to the legality of appellant's arrest and the legality of his detention. Following this hearing, the trial judge found that the arrest was illegal and that certain factors concerning the detention were improper, but that, nonetheless, the appellant's confession was independent of these factors and given of his own free will.

In reversing the trial court in this matter, the majority purports to weigh that evidence without reciting any causal connection between the illegalities and the confession. The majority draws the conclusion from the evidence that the confession was not in fact given by the appellant as his own free will, and concludes the trial court was in error in its factual findings. Thus, this Court substitutes its conclusion, unsupported by facts, that the confession was coerced.

After detailed examination of this record, I fail to find any causal connection between the supposed illegalities of appellant's arrest and detention with the confession he made. In fact, the briefs of appellant fail to make any such connection. Appellant's brief and the majority opinion simply recite the illegalities and then conclude that the confession should thus be excluded. I find this to be contrary to the authorities cited by the majority in support of their position.

I, therefore, would affirm the trial court in its finding of fact that the confession was admissible.

Arterburn, J., concurs.

NOTE.—Reported at 348 N.E.2d 623.