J. E. G. *v.* C. J. E.

[No. 2-775A189. Filed March 23, 1977.]

*David M. Adams, Castor, Richards & Adams,* of Noblesville, for appellant.

*Thomas Douglas,* of Anderson, for appellee.

SULLIVAN, J.—J. E. G. attacks a judgment which declares him to be the natural father of a child born to C. J. E. The judgment was premised entirely upon an admission of paternity by J. E. G. He asserts that the admission was given in open court not because it was true but because it was the only way to be released from jail. We reverse.

This action was commenced by C. J. E.'s filing of a verified petition of paternity on November 27, 1974, more than 8 months after the birth of the child. On the same day, the trial court, at the request of C. J .E.'s attorney, issued a warrant for J. E. G.'s arrest.[1] The warrant remained unserved until February 6, 1975, when J. E. G. was arrested and detained in the Madison County Jail. Thereafter, on February 14, 1975, J. E. G. was brought before the trial court.

The record reflects that during the eight days of detention, an attorney, apparently at the request of J. E. G.'s family, did briefly visit and confer with J. E. G. However, this attorney did not file an appearance on behalf of J. E. G. Moreover, this conferral, the nature of which is not disclosed, was the extent of representation for J. E .G. until after entry of judgment.

At the February 14 proceeding,[2] the trial court placed J. E. G. under oath and initially discussed the nature of the action and the ramifications of a paternity judgment if one

---

1. IC 31-4-1-13 (Burns Code Ed. 1973) provides:
"Upon the filing of such a petition the court may direct the clerk to issue a warrant in lieu of a summons for the defendant, if the defendant be the alleged father. Such warrant and the issuance and execution thereof shall be as provided for by law in criminal actions."
2. C. J. E. was not personally present at this proceeding but was present by her counsel.

were entered against him. During the course of this discussion, J. E. G. stated that he was ". . . pretty sure that it [the child] is mine . . ." When finally asked: "Do you acknowledge this child to be yours?", he answered, "Yes." The trial court on this admission alone entered the judgment of paternity.

After entry of the judgment, J. E. G. petitioned the trial court for relief from the judgment. The substance of his attack at the subsequent hearing as well as on appeal, is that his arrest and detention was so coercive as to unconstitutionally taint the arguably equivocal admission on which the judgment rests.

Before discussing the merits of J. E. G.'s contention, we note that C. J. E. has not filed a brief in this appeal. Therefore, J. E. G. is entitled to reversal, if he demonstrates a prima facie case of reversible error. *Lundsford* v. *Maida* (1957), 127 Ind. App. 236, 140 N.E.2d 762 (En Banc.).

## I.

### ARREST WAS UNREASONABLE

We hold that J. E. G.'s arrest was unreasonable because of the court's summary issuance of the arrest warrant without probable cause to believe that J. E. G. was the putative father *and* that he would not respond to a notice of the commencement of the suit against him. *See, State* v. *Klinker* (1975), 85 Wash.2d 509, 537 P.2d 268.

Both the United States and the Indiana Constitutions prohibit unreasonable search and seizure. U. S. Const. amends IV and XIV; Ind. Const., art. 1, sec. 11. This prohibition not only applies to search and seizure of property but also to physical apprehension of persons. *See, Terry* v. *Ohio* (1968), 392 U.S. 1, 9, 88 S.Ct. 1868; *Bacon* v. *United States*, (9th Cir. 1971), 449 F.2d 933, 942, n. 7; *Bryant* v. *State* (1973), 157 Ind. App. 198, 299 N.E.2d 200, 204.

Reasonableness is dependent upon the interests involved, both governmental and individual. *See, Camara* v. *Municipal Ct.* (1967), 387 U.S. 523, 536-37, 87 S.Ct. 1727. An arrest is reasonable only when the public good, which may be furthered by its utilization, outweighs the deprivation of an individual's liberty. *See, Camara* v. *Municipal Ct., supra.*

The balancing of interests is best observable in the criminal area where the issue most often arises. There the balancing of interests is implemented by the probable cause standard. *Camara* v. *Municipal Ct., supra,* 387 U.S. at 535, 87 S.Ct. at 1734. This standard posits a balance between the interest of the public to maintain an orderly and peaceful society against a suspect's right to his liberty or privacy. When there are adequate grounds to reasonably believe that a particular suspect has committed a felony, the public interest is strong enough to justify an arrest. Consequently, an arrest of a criminal suspect with or without a warrant is constitutionally acceptable where there is probable cause to believe that the suspect has committed a felony. *See, Finch* v. *State* (1975), 264 Ind. 48, 338 N.E.2d 629, 631; *Smith* v. *State* (1971), 256 Ind. 603, 271 N.E.2d 133.

Although most case law which discusses the reasonableness of an arrest is within the criminal context, this by no means indicates that the Fourth Amendment protection is inapplicable in civil cases. *See, United States* v. *Biswell* (1972), 406 U.S. 311, 92 S.Ct. 1593; *Wyman* v. *James* (1971), 400 U.S. 309, 91 S.Ct. 381; *Camara* v. *Municipal Ct., supra* (all deal with administrative regulatory searches).

Under the seizure portion of the Fourth Amendment, its application is essentially controlled by whether physical restraint is placed upon the person, not the purpose underlying the restraint. *Bacon* v. *United States, supra,* 449 F.2d at 942. But our analysis is not ended by blind application of criminal law precedent. Rather, since paternity actions are civil in nature, we must determine whether and to what extent

there exists a probable cause requirement for arrest of a putative father.[3]

The governmental interest which underlies Indiana's paternity proceedings is stated thusly:

"It is the obligation of the state of Indiana to provide proper legal procedures that will enable children born out of wedlock to have proper care, maintenance, education, protection, support and opportunities the same as children born in wedlock; and it [is] the purpose of this act [31-4-1-1—31-4-1-33] to establish procedures that will enable such children to have such rights and privileges." IC 31-4-1-1 (Burns Code Ed. 1973).

See, Sullivan v. O'Sullivan (1959), 130 Ind. App. 142, 146, 162 N.E.2d 315, 317.

This is to say that the state is genuinely concerned in assuring that the duty of supporting illegitimate children is placed upon those morally and legally obligated to do so and that such children do not unnecessarily become wards of the state. Such interest is clearly rational and substantial, see State v. Klinker, supra, and may under some circumstances justify the arrest of a putative father in order that the personal jurisdiction essential to a valid judgment for care and support may be acquired. However, we hold that an arrest may not be premised solely upon a mere filing of a verified petition alleging paternity.

As hereinbefore noted, the restraint upon individual liberty occasioned by arrest is a drastic means for protection of the public interest. Where less drastic means will effectively serve the public interest an arrest is necessarily unreasonable. Cf. Stanford Daily v. Zurcher (N.D. Cal. 1972), 353 F.Supp. 124.

Such "less drastic means" have been acknowledged and required by our Legislature, even with respect to unlawful conduct. IC 35-1-17-2(b) (Burns Code Ed. 1975), sets forth the

3. In State ex rel. Beaven v. Marion Juvenile Court (1962), 243 Ind. 209, 184 N.E.2d 20, our Supreme Court acknowledged the civil nature of paternity proceedings, noting however that the arrest provision of IC 31-4-1-13 is criminal in character.

procedure for issuing a summons, or in the alternative, an arrest warrant after "an indictment [has been] found or information . . . filed against a person charging him only with a misdemeanor." This statute sanctions the issuance of a warrant only if the court has reasonable cause to believe the accused will not appear or after the accused has failed to honor the summons or after the summons has been issued and the court is satisfied the accused will not appear as directed. The statute governing arrest in paternity proceedings, IC 31-4-1-13, *supra,* is somewhat analogous.

IC 31-4-1-13, *supra,* empowers the court in which a petition of paternity has been filed "to issue a warrant in lieu of a summons" for a putative father's arrest, provided that "[s]uch warrant and the issuance and execution thereof shall be as provided for by law in criminal actions." Implicitly this statute demonstrates a preference for summons over the warrant, inasmuch as the warrant is issued *in lieu* of a summons.[4] In addition, the civil nature of the proceeding in which a putative father is "charged" calls for a procedure at least as temperate as that utilized for misdemeanors which are criminal offenses.

The siring of an illegitimate child is not, in itself, a crime. *See, Neill* v. *Ridner* (1972), 153 Ind. App. 149, 152, 286 N.E.2d 427, 430. It is the social consequence of that act, in the sense of economic support required for the child, which creates the need for a procedure by which the desirable ends are achieved. Thus, the conventional complaint and summons is the means which generally should be employed. It is only where there is reasonable belief that the

4.  The arrest warrant provisions of § 13 immediately *follow* the summons provisions of IC 31-4-1-12 (Burns Code Ed. 1973). The latter statute reads:

"Upon the filing of such a petition the clerk of the court shall issue a summons for the defendant. The summons may be served by any peace officer or probation officer and shall be served not less than ten [10] days before the date set for the hearing on the petition. Otherwise the summons and the issuance and service thereof shall be as provided for by law and rules for civil cases."

public interest cannot be protected thereby, that an arrest may be tolerated. The Fourth Amendment reasonableness standard is met in paternity proceedings, and an arrest is justified, only when it has been determined by an impartial judicial officer that there is probable cause to believe that the named defendant is the father *and* that he will not respond to conventional civil process. *See, State* v. *Klinker, supra. Cf. Bacon* v. *United States, supra; Stanford Daily* v. *Zurcher, supra.* At the time of the arrest warrant issuance here, the record did not reflect any indication that J. E. G. would not respond to a summons.[5]

## II.

### DETENTION FOLLOWING ARREST WAS UNREASONABLE

J. E. G. was placed in the Madison County Jail after his arrest. He was held there until he was brought before the court some 8 days later. His detention was engendered by the initiation of this paternity action, an action, as we have noted, essentially civil in nature. *Neill* v. *Ridner, supra.*

With respect to the detention of a putative father pending a determination upon the merits of a paternity petition, considerations similar to those hereinbefore discussed are applicable. Consequently, some legitimate public interest which outweighs the individual's right to liberty under the Fourth and Fourteenth Amendments and article one, section eleven of the Indiana Constitution, must be furthered by detention and, at the same time, there must be an absence of a less drastic effective means. Personal jurisdic-

---

5. The probable cause test for a warrantless arrest is, ". . . "whether *at the time of the arrest* the facts and circumstances within the knowledge of the officers and of which they had reasonably trustworthy information were sufficient to warrant a prudent man of reasonable caution in believing that the arrestee had committed or was committing an offense." *Smith* v. *State, supra,* 256 Ind. at 607, 271 N.E.2d at 136. (Emphasis supplied.) Although this is a pronouncement of the law with respect to a warrantless arrest, it nevertheless applies equally to issuance of arrest warrants by magistrates. *See, Aquilar* v. *Texas* (1964), 378 U.S. 108, 110, 84 S.Ct. 1509, 1511-12.

tion may be obtained by service of summons or by arrest. *Compare, Neill* v. *Ridner, supra, with Frisbie* v. *Collins* (1952), 342 U.S. 519, 72 S.Ct. 509. But detention is not necessary to the acquisition or retention of jurisdiction. Rather, once such jurisdiction has been obtained a valid judgment may be entered whether or not the defendant has appeared. IC 31-4-1-14;[6] *Duncan* v. *Binford* (1972), 151 Ind. App. 199, 278 N.E.2d 591. However, pertinent paternity statutes do in fact contemplate detention as a device to promote satisfaction of any judgment which may be entered.

Once jurisdiction had been acquired, IC 31-4-1-14, *supra,* implicitly enables a court in its discretion to demand that a putative father post a pre-trial bond guaranteeing his presence at trial. If the bond is posted and the defendant fails to appear, the court may enter appropriate judgment and declare the bond forfeited for the benefit of the mother and illegitimate child. Absent the posting of this bond, detention is envisioned as an alternative means to insure that the putative father is before the court when judgment is rendered. If judgment in such instance, is then entered, the court may, as circumstances dictate, implement either IC 31-4-1-20[7] or

6. "If the defendant fails to appear in person for the hearing, the hearing may proceed, and the court may make a finding and enter an order the same as if the defendant were present. Any bond given by such defendant conditioned that he will appear for the hearing may be declared by the court to be forfeited and may be put in suit by any person in whose favor the court may adjudge any sum of money in the course of the proceedings." IC 31-4-1-14 (Burns Code Ed. 1973).

7. "Where the father of any child born out of wedlock has been ordered by the court, pursuant to the provisions of section 19 [31-4-1-19] of this act, to support such child, and where any such father shall fail or refuse to comply with such order, he shall be adjudged to be in contempt of court in any proceeding filed or instituted by the mother of the child, or by any one who has the custody and control of such child, to enforce the terms of any such support order. The court may if the defendant is found guilty of contempt in such contempt proceedings, make an order requiring the father of the child to pay the attorney appearing for the mother, or the person having control and custody of the child, a reasonable fee to be fixed by the court, as the court may deem fair and equitable under the circumstances and the evidence, which order for any such attorney fee may be enforced in the manner now provided by law for the enforcement of orders made by the court in divorce proceedings." IC 31-4-1-20 (Burns Code Ed. 1973).

IC 31-4-1-22,[8] sections which aid in the enforcement of a paternity judgment. The former section declares that when the mother or a party having custody of an illegitimate child institutes a proceeding against the adjudged father for non-compliance with the court's order, the court may cite the father for contempt of court. With respect to the latter section, the court, after judgment has been entered, "may, in its discretion, require the father to give security by bond . . . conditioned that he will pay the judgment . . ." and ". . . may commit the father to jail for not more than (1) year . . .", if the bond is not furnished.

These three sections taken collectively provide a method to effectuate the public interest where it is indicated that a putative or adjudged father will not honor a paternity judgment. However, detention, even under these provisions, is but a conditional means to justifiable ends.

Here, there is no indication of record, before or during his detention, which would have justified a reasonable belief that J. E. G. would not have appeared at trial when requested or have honored a judgment if one were entered against him. The requisite nexus between the detention and statutory purpose is absent.

---

8. "The court may, in its discretion, require the father to give security by bond with sureties conditioned that he will pay the judgment and otherwise comply with the order of the court. On failure to furnish such bond the court may commit the father to jail for not more than one [1] year. The obligation to pay the judgment, and otherwise comply with the order of the court shall not be affected by the commitment to, or a discharge from, jail. Instead of committing the father to jail, or as a condition of his release therefrom, the court may commit him to a probation officer, upon such terms and conditions regarding payments and personal reports as the court may direct. Upon failure to comply with such terms and conditions the court may commit or recommit the father to jail." IC 31-4-1-22 (Burns Code Ed. 1973).

## III.

## ADMISSION IS PRIMA FACIE TAINTED BY ARREST AND DETENTION

An illegal arrest or detention requires suppression of any confession[9] obtained unless that primary taint has been purged by a showing that the statement was sufficiently an act of free will. *Brown* v. *Illinois* (1975), 422 U.S. 590, 95 S.Ct. 2254; *Wong Sun* v. *United States* (1963), 371 U.S. 471, 83 S.Ct. 407; *Williams* v. *State* (1976), 264 Ind. 664, 348 N.E.2d 623. This is done primarily to protect Fourth Amendment rights. *Brown* v. *Illinois, supra; Williams* v. *State, supra,* 348 N.E.2d 627. However, an allegedly tainted confession under such circumstance nevertheless may be admissible if the statement meets the Fifth Amendment standard of voluntariness, *Brown* v. *Illinois, supra,* 422 U.S. at 602, 95 S.Ct. at 2254, and the statement, as hereinbefore noted, is "sufficiently an act of [a] free will to purge the primary taint [of the illegal arrest or detention]." *Wong Sun* v. *United States, supra,* 371 U.S. at 486, 83 S.Ct. at 416-17.

In *Williams* v. *State, supra,* the Indiana Supreme Court reversed a conviction which rested, in part, on a confession. The court held that the confession should have been suppressed because it was the product of an unlawful arrest and sixty-eight-hour detention. While *Williams* is a criminal case, we cannot find that its persuasiveness is lessened since the Fourth Amendment principles applied in that case are applicable here. It cannot be successfully argued that J. E. G.'s right to be secure against unreasonable seizures is any less as a paternity defendant than if he were a criminal defendant.

Justice Hunter's concurring opinion in *Williams* emphasized that in the truly criminal case, temporal proximity of arrest-

---

9. Although in the strict sense an admission is less inclusive than a confession, *Green* v. *State* (1973), 159 Ind. App. 68, 304 N.E.2d 845, our General Assembly defines a "confession" to include any self-incriminating statement. IC 35-5-5-5 (Burns Code Ed. 1975). This statutory definition is not confined to extra-judicial statements.

detention to confession is a strong factor. We must note that the converse is true in the instance before us. The accused criminal does not hold the key to his jail cell by confession—to the contrary, he locks it more tightly. On the other hand, the longer a paternity respondent is detained in jail the more coercive that detention becomes with regard to a confession of paternity which will unlock his jail cell.[10]

Neither does the fact that the confession or admission of J. E. G. here took place in open court and under oath affect the question of voluntariness. *See, People* v. *Dudley* (1969), 24 N.Y.2d 410, 248 N.E.2d 860, 301 N.Y.S.2d 9; *People* v. *Jackson* (1961), 23 Ill.2d 263, 178 N.E.2d 310; *State* v. *Assenberg* (1926), 66 Ut. 573, 244 P. 1027.

Since both arrest and detention were unreasonable, J. E. G. has demonstrated that his admission of paternity is, at the very least, a prima facie product of that arrest and detention. That admission may not properly, constitute the sole basis of the judgment below. To hold otherwise would be to sanction proceedings in which concepts of fundamental fairness are absent thus threatening the loss of the public confidence on which the effectiveness of our judicial system lies.

We, therefore, reverse and remand the cause for further proceedings consistent with this opinion.

Lybrook, J., (participating by designation) concurs; Buchanan, P.J., dissents, with separate opinion.

---

10. There may have been evidence to suggest that the causal chain between the illegal arrest—detention and admission was broken. But be that as it may, the burden of persuasion that J. E. G.'s free will was unaffected by the illegal acts does not rest upon him. *See, Brown* v. *Illinois, supra,* 422 U.S. at 604, 95 S.Ct. at 2254; *Williams* v. *State, supra,* 348 N.E.2d at 628. And in this connection we again note that C. J. E. has not contested J. E. G.'s appeal.

### DISSENTING OPINION

BUCHANAN, P.J.—I respectfully dissent on the ground that:
The Exclusionary Rule should not be extended to other than strictly criminal proceedings.

In a recent United States Supreme Court case, *United States v. Janis* (1976), 96 S.Ct. 3021, 3029, the Court observed that:

> In the complex and turbulent history of the rule, the Court never has applied it to exclude evidence from a civil proceeding, federal or state.

And later in the opinion:

> In some cases the courts have refused to create an exclusionary rule . . . in proceedings other than strictly criminal prosecutions. At 3033. See *United States ex rel. Sperling* v. *Fitzpatrick* (2d Cir. 1970), 426 F.2d 1161 (intrasovereign/parole revocation); *United States* v. *Schipani* (2d Cir. 1970), 435 F.2d 26, *cert. denied,* 401 U.S. 983 (1971), (intersovereign/sentencing).

Exactly what constitutes a "strictly criminal" prosecution and what constitutes a purely civil proceeding is not always discernible.

A paternity proceeding in Indiana has been described by the Indiana Supreme Court as "both civil and criminal" in character, in that the statutes provide in the alternative for the issuance of notice to the defendant by the service of summons or for his arrest as in criminal cases. *State ex rel. Beaven* v. *Marion Juvenile Court* (1962), 243 Ind. 209, 211, 184 N.E.2d 20, 21. However, the purpose of the proceeding is not to impose a fine, a forfeiture or imprisonment but rather to conduct an expeditious proceeding in order that "the infant which is the subject of the action may be supported from the time of its birth." *State ex rel. Beaven* v. *Marion Juvenile Court, supra* at 212, 184 N.E.2d at 21. I do not consider such a proceeding to be a strictly criminal proceeding in which the Exclusionary Rule would fulfill its purpose of deterring "future unlawful police conduct." *United States* v. *Calandra* (1974), 414 U.S. 338, 347.

Mr. Justice Blackmun in *Janis* pierced the heart of the matter:

> Jurists and scholars uniformly have recognized that the exclusionary rule imposes a substantial cost on the societal interest in law enforcement by its proscription of what concededly is relevant evidence. (Citations omitted.) 96 S.Ct. at 3029.

The societal interest in deterring future unlawful police conduct seems to me in the case before us to be more than overweighed by the societal interest in the admission of relevant evidence which would form the basis for the future support of an infant . . . a civil duty or obligation in which the State has a paramount interest.

I fail to see how the remedial objective of deterring future police conduct is efficaciously served by the extension of the Exclusionary Rule to what is essentially a civil proceeding with one criminal aspect to it.

As there are no Indiana cases on this subject, reference is necessary to federal authorities. The two most recent United States Supreme Court cases indicate a trend to restrict rather than extend the exclusionary principle. In *United States* v. *Janis, supra,* application of the Rule was denied in a civil proceeding for a tax refund.

The danger of future unlawful police conduct is primarily in the criminal field and if the prime purpose of the rule "if not the sole one"[1] is to deter future unlawful police conduct, then the remedial objective receives little benefit by being applied in a paternity action which is essentially a civil proceeding, the result of which is that the one charged with paternity must discharge a civil duty to support an infant he has sired. See *Sullivan* v. *O'Sullivan* (1959), 130 Ind. App. 142, 146, 162 N.E.2d 315, 317.

Thus, while I am willing to concede that J. E. G.'s arrest

---

1. *United States* v. *Janis, supra* at 3028.

may have been illegal,[2] society's interest in the fatherhood of the child requires admission of his acknowledgment of fatherhood.

To balance the societal interest any other way is to defeat the ends of justice.

NOTE.—Reported at 360 N.E.2d 1030.

2. It is unclear from the record whether J. E. G.'s arrest was actually illegal.