Willie TAYLOR, Jr., Appellant,

v.

STATE of Indiana, Appellee.

No. 679S149.

Supreme Court of Indiana.

June 27, 1980.

John D. Breclaw & Associates by Robert E. Stochel, Griffith, for appellant.

Theodore L. Sendak, Atty. Gen., Joel Schiff, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

After a trial by jury, defendant-appellant Taylor was found guilty of two counts of Robbery, a Class B felony. He was sentenced to twelve (12) years imprisonment on Count I and twelve (12) years imprisonment on Count II, said terms to be served concurrently. His Motion to Correct Errors was denied after hearing by the court on March 12, 1979. He appeals from this denial, alleging that the trial court erred in admitting a statement made by the appellant into evidence.

On April 10, 1978, at approximately 7:30 p. m., a Clark Service Station in East Chicago, Indiana, was robbed by three men. At approximately 3:30 a. m., April 11, the appellant and two other men were stopped by Highland police. Officer Schmidt had observed a vehicle making two U-turns crossing all four lanes of traffic and passing by a 7–11 Store. Because of the lateness of the hour, the absence of other traffic and the fact that only the 7–11 store on the corner was open all night, the officer radioed other units in the area, thinking that something suspicious was going on. The car pulled off on a side street and stopped. The lights were turned off. The car then moved to another location. At that time, Officer Schmidt observed that a tail light was out. Officer Darnell advised that he was close to the area. Officer Schmidt activated his red lights and pulled the car over. Another

squad car pulled up behind him. The driver of the stopped vehicle jumped out. Schmidt drew his weapon and told the driver to put his hands on the roof of the car and to remain still. Officer Darnell came up along the other side of the squad car and Schmidt asked the other occupants of the car to get out of the vehicle. All three were asked to go to the back of the car and place their hands on the trunk, which they did. Officer Darnell approached the car and observed a gun on the back floor board on the driver's side of the car. The men were handcuffed and the officers looked in the car with flashlights, and saw the butt of another weapon sticking out from under the front seat. Upon examination, the weapon was found to be a loaded .357 Magnum Black Hawk. Coins; quarters, dimes, nickles and pennies were also observed strewn about the car. Two holsters and a stocking cap with a slit halfway up, such as could be used for eye holes if worn over the face, were found. The passengers and driver were taken to the police station and all were advised of their *Miranda* rights. Willie Taylor, Jr., the appellant here, was advised of his rights and signed a waiver form after having the rights read to him and reading the waiver. This form was executed at 4:45 a. m. Appellant was placed in custody and was not questioned. No statements were taken at this time. Mencer Bray was the driver of the car and was later charged with having a gun without a permit. A message regarding the men being held was sent from the Highland police at 5:50 a. m. It was received by the East Chicago police at 8:00 a. m. The East Chicago police were aware of the robbery in their city and had information from the victims as to the general description of the people who had robbed them, the weapon used and what money was taken. This information was similar to the information teletyped from the Highland police.

A photographic display was conducted at 9:00 a. m., on April 11, in East Chicago, showing photographs to the victims of the robbery, which display included photographs of the men being held in Highland. The appellant was transported to East Chicago at 1:00 p. m., on April 11. East Chicago police informed him that he was being held for investigation of a robbery. Again, appellant was advised of his *Miranda* rights, and at approximately 2:00 p. m., on April 11, he gave a statement. A line-up was conducted at 10:00 a. m. the next day, April 12. Appellant was not identified at the line-up and was released immediately after the line-up. The total detention time of the appellant was from 3:30 a. m., on April 11, to approximately noon the next day. Charges were filed against the appellant for two counts of robbery on April 14, 1978.

Appellant's claim of alleged error specifically relates to his statement taken approximately ten (10) hours after his arrest. He claims that the driver of the vehicle, the other passenger and he were taken to the Highland Police Station for investigation and detained without probable cause to believe that they had committed any crime. We disagree.

At the time these men were taken to the police station and held, it appears clear that there was probable cause to believe they had committed a crime. Appellant makes much of the fact that Officer Schmidt was not aware of the specific robbery of the Clark Station in East Chicago at the time he detained the defendant. Taylor also emphasizes that he was told that the East Chicago Police were holding him for investigation of armed robbery.

 We note that a police officer may describe a situation as being one of investigation or suspicion, or he may state that he did or did not believe that he had probable cause. However, this subjective evaluation is not determinative of the issue. The test for probable cause was set out in *Brinegar v. United States*, (1949) 338 U.S. 160, 175–76, 69 S.Ct. 1302, 1310–11, 93 L.Ed. 1879, 1890, *quoting Carroll v. United States*, (1924) 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543, as follows:

> "Probable cause exists where 'the facts and circumstances within their [the officers'] knowledge and of which they had reasonably trustworthy information [are],

sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed [by the person to be arrested.]"

■ The initial stop of this car was lawful. The officer who stopped the vehicle had observed traffic violations committed in his presence and also had observed behavior that, in his experience, was suspicious conduct. The officer was discharging a legitimate investigative function when he decided to approach the occupants of the car. The governmental interest in effective crime prevention and detection underlies the recognition that a police officer may, in appropriate circumstances and in an appropriate manner, approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest. *Terry v. Ohio*, (1968) 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889. Officer Schmidt had observed this car in the early morning hours making U-turns. There was an absence of other traffic, and an open store which was isolated. The car pulled off on a side street, stopped, its lights were turned off. It then moved to another location. "It would have been poor police work indeed" for an experienced officer to have failed to investigate this behavior further. *Terry, supra*. This situation involved on-the-spot observations of the officer on the beat and the need for swift action predicated upon those observations. "The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, *Terry* recognizes that it may be the essence of good police work to adopt an intermediate response." "A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time." *Adams v. Williams*, (1972) 407 U.S. 143, 145–6, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612, 617.

■ After his decision to stop this vehicle, Officer Schmidt activated his red lights and another squad car pulled up behind him. At this point the driver of the stopped vehicle jumped out. Officer Schmidt drew his weapon and told him to stop. The other occupants of the car were also asked to get out of the vehicle. As the officers observed a gun in the car they were reasonable in their apprehension of possible danger. Further investigation revealed another weapon, scattered coins strewn about the car, holsters and slitted stocking hat. It is apparent that the facts and circumstances known to the arresting officers would warrant a man of reasonable caution and prudence in believing that the accused had committed or was committing a criminal offense. *Gaddis v. State*, (1977) 267 Ind. 100, 368 N.E.2d 244, 247; *Luckett v. State*, (1972) 259 Ind. 174, 284 N.E.2d 738. Based upon their experience and their on-the-scene evaluation of the situation, it appears that these officers were justified in taking the passengers and the driver into custody. All were given their *Miranda* rights and Taylor signed a waiver form. However, appellant was not questioned at this time and no statements were made by him.

When the appellant was taken into custody by the East Chicago Police, they were aware of the specific robbery in their city and had additional information gained from the robbery victims. This information correlated with the description of the men, the weapon and money found in the vehicle. Taylor was transported to East Chicago City Police station and "booked" for investigation of armed robbery. The East Chicago police again advised him of his *Miranda* rights. Appellant acknowledged his rights and signed a *Miranda* waiver form. He made a statement around 2:15 p. m., on April 11. It is the admission of this statement to which appellant objects.

Appellant relies on *Williams v. State*, (1976) 264 Ind. 664, 348 N.E.2d 623 for his claim that he was merely being held for investigation and that consequently his confession should be excluded.

This argument and cases cited in *Williams, supra; Brown v. Illinois,* (1975) 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416; *Wong Sun v. United States,* (1963) 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441; are directed to situations where appellants were "picked up" for questioning on the basis of information which was later determined to be insufficient for probable cause for arrest and focus on the original illegal detention.

"Those cases clearly hold that if probable cause for the initial detention is lacking, or if the initial detention is otherwise illegal, any confession obtained as a result thereof should be suppressed, unless the confession is a product of the individual's free will. In *Williams, supra,* we noted the factors established by *Brown v. Illinois, supra,* which are relevant in determining whether or not a confession is a product of a free will. These factors are: (1) whether the individual was informed of his rights as required by *Miranda v. Arizona,* (1966) 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694; (2) the temporal proximity of the arrest and the confession; (3) the presence of intervening circumstances; and (4) 'particularly, the purpose and flagrancy of the official misconduct.' *Brown v. Illinois,* 422 U.S. 590, 603–04, 95 S.Ct. 2254, 2261–62, 45 L.Ed.2d 416, 427."

*Porter v. State,* (1979) Ind., 391 N.E.2d 801.

It also appears from *Morris v. State,* (1980) Ind., 399 N.E.2d 740, that in considering the time element involved in determining under *Brown* criteria whether the initial illegal detention tainted the subsequent confession, (three hours in *Morris, supra,*), (first statement within an hour in *Dunaway v. New York,* (1979) 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824,) (less than two hours in *Brown, supra,*) that a statement made soon after an illegal detention is inadmissible because of the illegality of the initial arrest and the fact that as the time is brief between the arrest and the confession, it is unlikely that intervening circumstances have rendered the subsequent confession voluntary. Of primary concern in these cases is also the fact that police procedures used have been those of breaking and enter-

ing, or merely picking up for questioning. We have previously discussed the initial stop and arrest of the appellant here, and determined that the initial stop was lawful and that appellant was arrested with probable cause. When the East Chicago police took custody of appellant, they had knowledge of a robbery and general descriptions of the persons involved, money taken and weapon used. We cannot say that there was insufficient probable cause to support the arrest. Thus, the problems addressed by *Brown, supra,* and *Williams, supra,* do not arise. The subsequent confession was not the product of an illegal arrest. *Holleman v. State,* (1980) Ind., 400 N.E.2d 123.

Appellant also argues that even if the original detention was legal, it became illegal by the expiration of time between the time he was arrested and the time he was questioned. He claims that even if the arrest was made with probable cause and if the confession was made voluntarily, the confession must be suppressed if it was the product of an illegal detention, *citing Brown v. Illinois,* (1975) 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416; *Wong Sun v. United States,* (1963) 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441; *Williams v. State,* (1976) 264 Ind. 664, 348 N.E.2d 623.

■ Even though an illegal detention of short duration may render a confession inadmissible, it also appears that as the length of time of holding in custody increases, the possibility of a lawful detention becoming unlawful increases. Therefore, in *Fortson v. State,* (1979) Ind., 385 N.E.2d 429, it was held that when appellant was held for five days before being taken before a judge, that while the period of detention was not unlawful in its inception, it became so by reason of its duration. The court held that the unreasonable extended period of detention was at least sufficient to trigger the constitutional analysis mandated by the United States Supreme Court in *Brown v. Illinois, supra.*

However, this court has repeatedly held that the taking of a statement after the defendant has been in custody for over six

hours does not render the statement inadmissible, but is one factor to be considered by the trial judge in determining the issue of voluntariness. *Hill v. State*, (1979) Ind., 390 N.E.2d 167; *Franklin v. State*, (1977) 266 Ind. 540, 364 N.E.2d 1019.

Appellant also claims that he was promised leniency and that this rendered his statement involuntary. Appellant testified at the motion to suppress hearing that Officer Smith said that he was picked out in a robbery and that Taylor would be charged with a misdemeanor for stealing the coin changer if he gave a statement. Officer Smith was questioned at this hearing and denied that he had offered Taylor a lesser charge in exchange for a statement.

 We will not disturb a trial court's ruling on the admissibility of a statement or confession when that ruling is based on conflicting evidence. *McFarland v. State*, (1978) Ind., 381 N.E.2d 1061. The trial court's finding will be upheld if there is substantial probative evidence to support such finding. *Works v. State*, (1977) 266 Ind. 250, 362 N.E.2d 144. In reviewing such evidence, the standard for this Court in determining voluntariness is "whether the self-incriminating statement was freely self-determined, the product of a rational intellect and free will, without compulsion or inducement of any sort, and whether the accused's will was overborne." *Brewer v. State*, (1979) Ind., 390 N.E.2d 648, 652; *Murphy v. State*, (1977) 267 Ind. 184, 190, 191, 369 N.E.2d 411, 414.

 In the present case appellant was advised of his rights on two occasions. He had been arrested with probable cause. He read and signed a waiver of rights form prior to making his confession. The police officers testified that he "looked okay and that there was no reason to think that there was anything wrong with him." He had no difficulty in reading the *Miranda* forms out loud. Appellant gave his statement approximately ten hours after he was arrested and was released the next day. Officer Smith testified that he had not made any offers or promises of leniency to the appellant in exchange for his statement. The

police conduct here was reasonable and prudent. We find that there was substantial evidence from which the trial court could have concluded that appellant's confession was given freely and voluntarily, and that it was not the product of a Fourth Amendment violation. *Arch v. State*, (1978) Ind., 381 N.E.2d 465. There was no error in the admission of this statement.

Judgment affirmed.

All Justices concur.