EDWIN H. SPRINGER, A/K/A DON RAY GREEN *v.* STATE

[No. 2-876A305. Filed February 2, 1978.]

*Marshall Williams* of Indianapolis, for appellant.

*Theodore L. Sendak*, Attorney General, *Alembert W. Brayton*, Deputy Attorney General, for appellee.

SULLIVAN, P.J. — Springer appeals his jury conviction of armed robbery, presenting two issues for review:

(1) whether he has been denied his constitutional right to a speedy trial, and

(2) whether he was unconstitutionally required to incriminate himself.

We affirm.

### I.

The record reveals that the offense in question was committed on or about March 29, 1971. Detective Buchanan testified that after speaking to witnesses, he obtained an affidavit charging Edwin Springer with the offense of armed robbery. A warrant for Springer's arrest was issued on or about April 18, 1971. The record before us contains neither the affidavit nor the warrant.

Springer was not apprehended. Instead, sometime in November, 1971, he was arrested in Terre Haute, apparently under the name of Don Ray Green, and was returned to the California prison from which he had escaped. It appears that the name Edwin H. Springer is an alias used by Don Ray Green. For that reason, Marion County officials were unaware that Springer (Green) was in California's custody. Yet, according to Springer's testimony, sometime in September, 1972, a detainer was lodged against him from the State of Indiana. The detainer is not part of the record. Thereafter, the following sequence of events occurred:

9/23/72   Letter from Don Ray Green to the Clerk of the Superior Court of Marion County requesting information regarding the Indiana speedy trial rules and asking for any information regarding outstanding warrants for his arrest. (Copy sent to prosecuting attorney). The letter did not indicate in any manner that Don Ray Green was also known as Edwin H. Springer.

9/27/72   Motion from Don Ray Green to the Presiding Judge of the Marion County Superior Court requesting a speedy trial. (Copy to the prosecuting attorney).

9/29/72   Letter from a member of Prosecutor's staff to Don Ray Green to the effect that no warrants were outstanding against Don Ray Green.

1/29/73   Motion filed with the Municipal Court of Marion County seeking dismissal of pending charges. (Copy to the prosecutor's office). The caption on the motion reads "Don Ray Green, a/k/a Edwin H. Springer."

2/26/73   Letter from Marion County Deputy Prosecutor to officials of California prison requesting information about the reason Springer was in prison, when he would be eligible for parole and the procedures to be followed if the state wanted to bring him back to Indiana for trial.

3/8/73   Letter from California prison officials to Deputy Prosecutor listing the offenses and terms for which Springer was confined, stating that parole would be considered in May, 1973, and advising that extradition proceedings be initiated through the Governor's office.

6/18/73   Motion filed in Circuit Court of Marion County from Don Ray Green, a/k/a Edwin H. Springer requesting a speedy trial. (Copy to prosecutor's office).

9/5/73    Letter from Deputy Prosecutor to California prison official stating that 3-8-73 letter had been misfiled and inquiring whether Springer was still in custody.

9/12/73   Letter from California prison official to Deputy Prosecutor that parole was denied in May, 1973, that Springer was still incarcerated, and would again be eligible for parole in May, 1974.

10/26/73  Affidavit for armed robbery filed and extradition proceedings begun.

2/14/74   Extradition hearing held and Springer returned to Indiana.

4/8/75    Springer tried and convicted of armed robbery.

Springer contends that he was denied his right to a speedy trial as guaranteed by both the State and Federal constitutions. His contentions are predicated upon the commands of Ind. Rules of Procedure, Criminal Rule 4(B) and the cases of *Smith v. Hooey* (1969) 393 U.S. 374, 89 S.Ct. 575, *Barker v. Wingo* (1972) 407 U.S. 514, 92 S.Ct. 2182, and *Moore v. Arizona* (1973) 414 U.S. 25, 94 S.Ct. 188.[1]

We note initially that our Supreme Court has recently held that the time limitation of CR. 4(B) is inapplicable to an accused incarcerated outside the state of Indiana. *Smith v. State* (1977), 267 Ind. 167, 368 N.E.2d 1154. Thus our sole inquiry in whether Springer's constitutional right to a speedy trial has been denied.[2]

In *Smith v. Hooey, supra,* the defendant was incarcerated in another jurisdiction during a six year post-indictment delay. Despite

1.   We do not address a belated argument concerning application of the 180 day trial requirement of IC 11-1-7-1 (effective April 14, 1973). It was advanced for the first time in Springer's Supplemental Citation of Authority. See Ind. Rules of Procedure, Appellate Rule 8.4(B).

2.   The Sixth Amendment standard for measuring the defendant's right to speedy trial is applicable to the Indiana constitutional guarantee. *Stewart v. State* (1976), 170 Ind. App. 696, 453 N.E.2d 749, 753; *Collins v. State* (1975), 163 Ind. App. 72, 321 N.E.2d 868, 871.

defendant's repeated attempts to gain a speedy trial, Texas officials made no effort to comply with his demands. The defendant moved to dismiss the pending charge but no ruling on the motion was made. He then brought mandamus proceedings in the Texas Supreme Court, asking for an order to show cause why the pending charge should not be dismissed. In refusing mandamus, the Texas court adhered to its view that the state had no duty to even attempt extradition because without "any waiver, permission or act of grace" of the other jurisdiction, the state had no power to bring the defendant to trial. The United States Supreme Court vacated the order and remanded the case, casting upon the state a constitutional duty, upon a defendant's demand, to make a "diligent, good faith effort to bring him [to] trial." 89 S.Ct. at 579.

In two subsequent cases, the Indiana Supreme Court acknowledged and applied the "diligent, good faith" constitutional duty imposed upon the State as set forth in *Smith v. Hooey, supra. Smeltzer v. State* (1970), 254 Ind. 165, 258 N.E.2d 647; *Fossey v. State* (1970), 254 Ind. 173, 258 N.E.2d 616. In so doing, our Supreme Court noted that *Smith v. Hooey* did not articulate guidelines for determination of *that* question and our Supreme Court proceeded to set forth factors, indicia or considerations for resolution of *that* question.

In *Smeltzer* and *Fossey*, our Supreme Court looked to the length of time between speedy trial demand and initiation of procedures by the State to bring defendant to trial and to the particular procedures utilized by the State to obtain release of a defendant in the foreign jurisdiction for return to Indiana. *See Smeltzer v. State, supra,* 258 N.E.2d at 650; *Fossey v. State, supra,* 258 N.E.2d at 620. *Smeltzer* and *Fossey* did not purport to hold that the sole determinants of a defendant's speedy trial rights were embraced within the indicia or factors therein enumerated. To the contrary, both decisions recognized that it was necessary to "look at all the facts and circumstances in each case", not only to the enumerated factors. *Smeltzer v. State, supra,* 258 N.E.2d at 650 and *Fossey v. State, supra,* 258 N.E.2d at 620.

In *Barker v. Wingo, supra,* the United States Supreme Court joined the Indiana Supreme Court in recognizing that rigid tests or standards for gauging speedy trial rights are inappropriate, if not impossible. The court therein noted the "amorphous quality of the right" and adopted a balancing test as follows:

> "A balancing test necessarily compels courts to approach speedy trial cases on an ad hoc basis. We can do little more than identify *some* of the factors which courts should assess in determining whether a particular defendant has been deprived of his right. Though some might express them in different ways, we identify four such factors: Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." (Emphasis supplied). 92 S.Ct. at 2192.

*Barker* emphasized that none of these factors alone is a sufficient or necessary condition to support a finding of a speedy trial deprivation:

> "Rather, they are related factors and must be considered together with such other circumstances as may be relevant. In sum, the factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process." *Id.* at 2193.

The constitutional dictate of *Smith v. Hooey, supra,* was thus given some perspective and dimension. But that perspective and dimension necessarily extends beyond the mere presence or absence of good faith and diligence on the part of the State.

It may well be that bad faith on the part of the State renders other factors irrelevant. But the question of diligence is closely tied to questions of length of delay, negligence or legitimate purpose as opposed to bad faith, [*Dickey v. Florida* (1970), 398 U.S. 30, 90 S.Ct. 1564, (Brennan, concurring)] and the conduct of, and the effect of delay upon, the defendant. It is for this reason that we conclude that the constitutional requirement for the State to use "a diligent, good faith effort" requires examination of myriad factual considerations including, but not necessarily limited to, those set forth in *Barker v. Wingo, supra,* and in *Smeltzer* and *Fossey, supra.*

The fact that our Indiana Supreme Court decided *Hart v. State* (1973), 260 Ind. 137, 292 N.E.2d 814 without mention of *Barker v.*

*Wingo* does not constitute a rejection of the reasoning contained in *Barker*. In *Hart*, our Supreme Court relied exclusively upon *Smeltzer* and *Fossey* which, as we have already noted, presaged *Barker v. Wingo* with respect to acknowledgement of the ad hoc nature of speedy trial determinations. *Barker v. Wingo* is therefore totally compatible with and complementary to existing Indiana case law.

In *Barker*, Mr. Justice Powell speaking for the court, cogently noted that the federal constitutional right to a speedy trial cannot be "quantified into a specified number of days or months [but that] States, of course, are free to prescribe a reasonable period consistent with constitutional standards . . ." 92 S.Ct. at 2188.

*Barker* thus acknowledged what our Ind. Rules of Procedure, Criminal Rule 4(B) has articulated as a *per se* violation of the federal and state constitutional rights to speedy trial. For persons incarcerated within this jurisdiction, that outer limit is now 70 days. For those incarcerated elsewhere, the basic limitation is 180 days. *See* Footnote 1, *supra*.

In light of *Smith v. State, supra*, however, the State's quantification set forth in CR. 4(B) is inapplicable to one incarcerated in another jurisdiction and the 180 day quantification contained in IC 11-1-7-1 is not before us because not timely presented. *See* Footnote 1, *supra*.

Thus, disposition of this appeal must be governed by the ad hoc factors and considerations heretofore mentioned. Employing these factors, we begin our analysis with a consideration of the length of delay, which is to some extent a triggering mechanism.

In the case before us, almost four years elapsed between the issuance of the warrant for Springer's arrest and the date of his trial. Because Springer alleges that the State was aware of his confinement and availability for trial but failed to prosecute the action, we believe this delay justifies further inquiry. Therefore, we examine the reasons for the delay.

Prior to January, 1973, it may be fairly said that the delay, if any, was occasioned solely by the fact that Springer was

incarcerated in California under the name of Don Ray Green and until his "Motion" of January 29, 1973, there was no opportunity for the State of Indiana to appreciate his whereabouts or availability for trial. Only at that date, therefore, was the State of Indiana able to utilize diligent efforts to bring him to trial; and only then can it be said that Springer asserted his speedy trial right. Our statement in this regard is not intended as a revival of the "demand-waiver" requirement which was rejected in *Barker v. Wingo*. Rather, it is our acknowledgment that consideration of length and reasons for the delay involve other correlative factors which are essential to resolution of the speedy trial issue. In short, the factors which *Barker v. Wingo* set forth and those employed by our Supreme Court in *Smeltzer, Fossey* and *Hart* are seen to overlap, divide and multiply as if viewed under a biology class microscope. We further acknowledge that in some instances the "diligent, good faith effort" requirement may be triggered by something other than affirmative and actual knowledge of the defendant's whereabouts and availability for trial.

As we have charged Springer with the delay prior to January 29, 1973, we likewise charge him with the delay from October, 1973, to the date of trial. The time between October, 1973 and February, 1974, when Springer was returned to Indiana is accounted for by the extradition proceedings in California. During this period Indiana authorities evidenced all good faith and the delay was occasioned solely by Springer's justified insistence that Indiana prove good cause for extradition. Subsequent to Springer's return to Indiana, the delay to date of trial is attributable solely to a series of continuances obtained upon Springer's own request.

We are left with the delay period of approximately nine months from February 1973 to October 1973 which may be attributed to the State's negligent or unexcused failure to return Springer from California. That period is accounted for, in part, by the State's admitted misfiling of the California correspondence of March, 1973, concerning Springer's incarceration and availability for return to Indiana.

Though negligence or inadvertance is weighted less heavily against the State in the *Barker* balancing test than is purposeful delay, nevertheless, such must be considered in the equation since the ultimate responsibility for affording speedy trial rights rests with the government rather than with the defendant. *Barker v. Wingo, supra,* 92 S.Ct. at 2192.

We view this unexcused period of delay within the context of all the other circumstances apparent from the record and now turn to a consideration of the effects of that delay upon the defendant. In this connection it must be emphasized that an affirmative showing of prejudice is not necessary to establish a denial of the speedy trial right. The existence or absence of prejudice is but a factor in the entire equation. *Moore v. Arizona, supra,* 94 S.Ct. at 189.

Springer alleges that he has suffered from "the pernicious effects" of the detainer lodged against him because it precluded favorable consideration for parole in California, thwarted his participation in and benefit from rehabilitative training, and subjected him to a higher custody classification. He further argues that he has permanently been deprived of the possibility of serving a sentence concurrent with those stemming from the California charges. Finally, Springer argues that he was prevented from presenting a defense because of missing witnesses and lapses in memory. Even were we to concede that these effects were an incident of the delay, a finding of a deprivation of the speedy trial right is not required. As stated, they are but factors to be considered in the balancing test.

No facts are set forth supporting the assertion that Springer's defense was impaired or that he was otherwise prejudiced. The record does not contain the names of allegedly missing witnesses nor the probable substance of their testimony. Indeed, a review of the transcript of testimony reveals but few lapses of memory, none of which related to an essential issue of the charge. We conclude that the delay in this case did not affect "the integrity of the fact-finding process."

In light of the minimal prejudice, if any, suffered by the defendant, the not unreasonably long unexcused delay and the negligent,

as opposed to deliberate, conduct on the part of the State, we believe that the trial court properly denied Springer's motion for discharge. We do not imply that a similar period of delay may not, in a different case, result in a speedy trial deprivation. Rather, we simply hold that under the facts and circumstances of this case, the constitutional right to a speedy trial has not been denied.

## II.

Two witnesses to the robbery in question testified that the bandit lacked one of his fingers. The prosecutor attempted to elicit testimony from a police officer that Springer was missing a finger, but when he asked, "What, if anything, have you noticed in regard to any part of Springer's anatomy?" defense counsel objected:

> "*MR. RILEY*: Your Honor, at this time we would object to that question because it calls for an opinion of this particular police officer. The defendant is here present, in full view of the jury, and they are quite aware of what he looks like.
>
> *THE COURT*: That objection will be sustained.
>
> *MR. GROTH*: Your Honor, at this time the State would ask the Court's permission to instruct Mr. Springer to display both of his hands to the jury.
>
> *MR. RILEY*: Your Honor, that is quite extraordinary. This defendant doesn't have to do anything.
>
> *THE COURT*: Are you objecting to it?
>
> *MR. RILEY*: Yes, Your Honor.
>
> *THE COURT*: That will be overruled. The defendant is ordered to stand and display his hands to the jury."

Springer argues that this action violated his right against compulsory self-incrimination as guaranteed by both the state and federal constitutions. It is argued that by making him display his hands to the jury, "the trial court compelled him to be a witness and, in effect, testify against himself." The state counters that error, if any, was invited by defense counsel's statement that "[t]he defendant is here present, in full view of the jury, and they are quite aware of what he looks like." We prefer to discuss this issue on its merits.

The proscription against compulsory self-incrimination has been extended only to "communicative" responses ". . . and not compulsion which makes an accused the source of 'real or physical  evidence' . . . [*Schmerber v. California* (1966), 384 U.S. 757, 86 S.Ct. 1826]." *Gilbert v. California* (1967), 388 U.S. 263, 87 S.Ct. 1951, 1953. Therefore,

". . . it does not shield against compulsory submission to tests that are merely physical in nature, such as fingerprints, measurements, voice or handwriting exemplars or *physical characteristics* or abilities. [citations omitted]." *Hollars v. State* (1972), 259 Ind. 229, 286 N.E.2d 166, 168. (Emphasis supplied).

See also, *Frances v. State* (1974), 262 Ind. 353, 316 N.E.2d 364; *Davis v. State* (1977), 174 Ind. App. 433, 367 N.E.2d 1163; *Paschall v. State* (1972), 152 Ind. App. 408, 283 N.E.2d 801.

It was not error to require the defendant to stand and display his hands to the jury.

The judgment is affirmed.

Lowdermilk, J., (participating by designation) and White, J. concur.

NOTE—Reported at 372 N.E.2d 466.