**Robert L. FLYNN, Appellant–Defendant,**

**v.**

**STATE of Indiana, Appellee–Plaintiff.**

**No. 2–580 A 128.**

Court of Appeals of Indiana,
Fourth District.

Nov. 17, 1980.

---

Sharon Carroll Clark, Gregg & Clark, Anderson, for appellant–defendant.

Theodore L. Sendak, Atty. Gen., Janis L. Summers, Deputy Atty. Gen., Indianapolis, for appellee–plaintiff.

CHIPMAN, Judge.

Robert Flynn was convicted of two counts of theft,[1] each for the theft of an automobile, and sentenced to a two–year term on each to be served concurrently. The following issues are raised on appeal:

    I.  Did the trial court err in admitting an inculpatory statement?

---

1. IC 35–43–4–2 states:

"A person who knowingly or intentionally exerts unauthorized control over property of another person, with intent to deprive the other person of any part of its value or use, commits theft, a class D felony."

II. Whether the trial court erred by ordering Flynn to display his forearm to the jury.

III. Was it error to place the verdict forms in two envelopes?

IV. Should the trial court have suspended Flynn's sentence?

We affirm.

### I. Admission of Inculpatory Statement

On November 19, 1978, Flynn was in the Madison County jail awaiting proceedings concerning an armed robbery in which he was allegedly involved. On that date he, along with two other prisoners, escaped. The three of them then proceeded to steal the two automobiles involved in this case. They later boarded a train and finally ended up in an empty house where they were apprehended. He was returned to jail the day of his escape.

The next morning Flynn was informed of his *Miranda* rights and signed a waiver form. He was then interviewed, which resulted in his giving the statement here in question. He was removed from the jail and placed in the Indiana Reformatory for safekeeping. On November 21, the prosecutor filed the two theft charges. On November 23, the informations were read to him. On November 27, the sheriff was ordered to transport Flynn to Madison Circuit Court for arraignment. On December 4, Flynn was brought before the court for the first time on these charges.

Flynn contends the time between his arrest and appearance before a magistrate constitutes an unreasonable delay. He thereby concludes that the confession which was made during that time should be inadmissible.

In Indiana delay does not per se invalidate a confession obtained while the defendant is in custody. It is, however, a factor to be considered in determining admissibility, e. g., *Arch v. State*, (1978) Ind., 381 N.E.2d 465. IC 35–5–5–3[2] provides circumstances under which such a confession may be admissible. "[T]he confession must be suppressed, nevertheless, if it was the product of an illegal detention." *Williams v. State*, (1976) 264 Ind. 664, 348 N.E.2d 623, 627.

Here Flynn's confession was clearly made beyond the six hour time limitation set forth in IC 35–5–5–3. Thus, to render it admissible the delay must have been "reasonable, considering the means of transportation and the distance to be traveled to the nearest available judge." In reviewing the trial court's determination of admissibility we are not allowed to reweigh the evidence but only to determine if there is evidence to support the trial court's decision, e. g., *Holleman v. State*, (1980) Ind., 400 N.E.2d 123. We must conclude that Flynn's detention in the Indiana Reformatory rendered some delay reasonable due to the realistic problems inherent in transporting an escapee.

We must next determine if the confession was the product of an illegal detention. We first note that Flynn was neither illegally arrested nor detained. As an escapee he could be arrested without a warrant, *Gross v. State*, (1917) 186 Ind. 581, 117 N.E. 562, and detained, IC 35–1–20–7; *Ex Parte Clifford*, (1867) 29 Ind. 106. Since Flynn was lawfully detained the confession could not be suppressible as a product of an

---

2. IC 35–5–5–3 states:

"In any criminal prosecution by the state of Indiana, a confession made or given by a person who is a defendant therein, while such person was under arrest or other detention in the custody of any law enforcement officer or law enforcement agency, shall not be inadmissible solely because of the delay in bringing such person before a judge if such confession is found by the trial judge to have been made voluntarily and if the weight to be given the confession is left to the jury and if

such confession was made or given by such person within six hours immediately following his arrest or other detention:

Provided, That the time limitation contained in this section shall not apply in any case in which the delay in bringing such person before a judge beyond such six–hour period is found by the trial judge to be reasonable, considering the means of transportation and the distance to be traveled to the nearest available judge."

*unlawful* detention. In addition, we have determined the delay was not unreasonable and therefore does not require the constitutional analysis presented in *Brown v. Illinois*, (1975) 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416; *Fortson v. State*, (1979) Ind., 385 N.E.2d 429. Nonetheless we will apply the constitutional factors set forth in *Williams v. State, supra*,[3] to determine if Flynn's confession was even a product of the detention.

Flynn was returned to the jail in the evening of November 19. He did not make his confession until at least twelve hours later. However, this delay clearly was not due to prolonged questioning. Flynn was returned to the jail where he stayed for the remainder of the night. The next morning he was taken to the Anderson Police Department where he was advised of his *Miranda* rights and signed a waiver form at 9:20. He began his statement at 9:27 and completed it at 10:57. Thus, although there was a delay between the arrest and confession it was caused by the intervening circumstance of allowing Flynn to get a night's sleep before questioning. Considering the first three factors we see no purpose in suppressing the statement since no abuse had yet occurred.

This brings us to consideration of the fourth factor: "the purpose and flagrancy of the official misconduct." The delay between the arrest and appearance before a magistrate here was caused by the administrative inconvenience in returning Flynn to Madison Circuit Court once he had been removed to the reformatory. We cannot condone the deprivation of a citizen's rights solely for administrative convenience. However, Flynn was lawfully being held in custody as an escapee. It is not as if he were being detained solely on the theft charges. In addition, we note the confession came within the first day of the detention. Thus the purpose of the delay could not have been to elicit a confession.

In *Holleman v. State, supra*, our Supreme Court dealt with a situation where there was a seventy–eight day delay between the defendant's arrest and arraignment, however, he was also being properly detained on several other unrelated charges. We quote at length:

[A]ppellant argues that he was illegally detained in the St. Joseph County Jail and that this illegal detention tainted the two confessions and rendered them inadmissible.... Holleman was arrested in South Bend on October 17, 1976, on an unrelated charge. He was arrested on the charge we are concerned with October 21, while still in custody. Appellant was not taken before a magistrate in Lake County concerning this charge until January 7, 1977. However, the record reveals that, between October 17 and January 7, appellant appeared in state or federal court in South Bend on ten different occasions, the last of which was a federal court trial which concluded on January 5, 1977. Appellant emphasizes that seventy–eight days elapsed between his arrest on this charge and his initial appearance before a magistrate. From this fact he argues that the confessions were a product of this detention.

In *Arch v. State*, (1978) Ind., 381 N.E.2d 465, 468, we stated that '[d]elay in presenting a defendant before a magistrate does not make a confession inadmissible as a matter of law, but is rather one

---

**3.** In *Williams v. State*, supra, our Supreme Court reiterated the factors established by the United States Supreme Court in *Brown v. Illinois, supra*, to be used to determine if a confession is a product of an unlawful detention and thus inadmissible.

"The Court noted that persons arrested illegally (or, in our case, detained illegally) may decide to confess, as an act of free will unaffected by the initial illegality. And the determination, whether the confession is the product of free will under *Wong Sun*, is dependent entirely on the facts of the particular case. However, the Court went on to suggest four relevant factors: (1) whether the individual was informed of his rights as required by *Miranda*, (2) the temporal proximity of the arrest and the confession, (3) the presence of intervening circumstances, and (4) 'particularly, the purpose and flagrancy of the official misconduct.' ... 25 S.Ct. at 2262."

*Williams v. State*, supra, 348 N.E.2d at 628.

factor to be considered in the question of admissibility.' . . . [T]his question must be resolved by the trial court through an examination of the totality of the circumstances. If there is substantial evidence to support the trial court's finding, that finding will not be disturbed.

While we agree that arrangements should have been made for a court appearance on this charge at an earlier date, we do not believe this period of detention caused the confessions to be given involuntarily. First, the confessions were given on the fourth and ninth days following appellant's arrest on the unrelated charge, not *after* the seventy-eight-day detention. Second, during that nine-day period, appellant was making four court appearances in South Bend. We cannot say the police acted unreasonably, and with an eye toward obtaining a confession at the expense of denying appellant his rights, in failing to take him before a magistrate during this nine-day period. Further, no evidence which was admitted at trial was obtained from appellant after the ninth day. Thus, he can show no prejudicial impact from the longer, more objectionable period of detention. . . . A consideration of all of the evidence . . . leads us to conclude that the trial court properly admitted the confessions into evidence. There was sufficient evidence to support the court's conclusion that the confessions were voluntarily given and were not the product of an illegal detention. (citations omitted)

*Holleman v. State, supra* at 127.

Considering the facts of the case at bar we must conclude as did our Supreme Court in *Holleman v. State, supra* that the trial court did not err in admitting the confession.

**4.** Our courts have repeatedly held that the proscription against compulsory self-incrimination extends only to testimonial or communicative responses not to purely physical tests which make the accused the true source of demonstrative evidence. *E. g., McClain v. State*, (1980) Ind., 410 N.E.2d 1297 (semen sample); *Jones v. State*, (1977) 267 Ind. 205, 369 N.E.2d

## II. Display of Arm

During the trial of the cause Flynn was ordered by the court to display his tattooed forearm to the jury. The purpose was to substantiate a victim's identification of Flynn as the man who threatened him and his testimony which included a statement that the perpetrator had a tattoo on his forearm. Flynn contends this abridged his privilege against self-incrimination.

He does not contend this display was testimonial rather than physical in nature,[4] but rather contends the display was self-incrimination because he was required to stand and approach the jury. The record does show he was ordered to stand and bare his arm. We see no distinction between this situation and the one presented in *Springer v. State*, (1978) Ind.App., 372 N.E.2d 466, where the defendant was required to stand and display his hands to the jury. In *Springer* we found no self-incrimination occurred; similarly we find none here.

## III. Verdicts in Separate Envelopes

At the conclusion of the evidence presented at the trial the attorneys examined and accepted the proposed verdict forms. The court then placed the forms in two envelopes marked "Count I" and "Count II". Flynn objected to this procedure as being "unduly suggestive." He, however, fails to explain how or of what it is suggestive. In addition he fails to allege in what manner he was prejudiced by this procedure. Thus, even if there were error committed it could not be reversible. *Moore v. State*, (1979) Ind.App., 391 N.E.2d 1168.

## IV. Suspension of Sentence

Flynn contends the trial court erred by not suspending his sentence. IC 35–50–2–2 [5] gives the trial court the discretion to

418 (fingerprints); *Hollars v. State*, (1972) 259 Ind. 229, 286 N.E.2d 166 (handwriting exemplar); *Springer v. State*, (1978) Ind.App., 372 N.E.2d 466 (display of hands); *Davis v. State*, (1977) Ind.App., 367 N.E.2d 1163 (breath analysis).

**5.** IC 35–50–2–2 states in part:

suspend a sentence such as Flynn's. However, this does not confer a right to probation, the granting of which rests in the sound discretion of the court. *State v. Palmer*, (1979) Ind., 386 N.E.2d 946. Thus, on review we can only modify this decision, like any other sentence if we find it "is manifestly unreasonable in light of the nature of the offense and the character of the offender." Indiana Rules of Procedure, Rules for the Appellate Review of Sentences 2(1).

Flynn points to the fact that his prior record includes only a public intoxication conviction to demonstrate the unreasonableness of his sentence. He fails to mention that the instant offenses were committed during a jail escape and completed with the threat of deadly force. In light of all the facts we cannot say the trial court's failure to suspend Flynn's sentence was unreasonable.

Finding no reversible error, we affirm.

YOUNG, P. J., and MILLER, J., concur.

"(a) The court may suspend any part of a sentence for a felony unless ...

(b) Whenever the court suspends a sentence for a felony, it shall place the person on probation under IC 35–7 ..."