# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 29 2020, 10:34 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Holly L. Lyons
Brand & Morelock
Greenfield, Indiana

ATTORNEYS FOR APPELLEE

Josiah Swinney
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Brandon L. Shockley, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | May 29, 2020 <br><br> Court of Appeals Case No. 19A-CR-161 <br><br> Appeal from the Hancock Superior Court <br><br> The Honorable Dan E. Marshall, Judge <br><br> Trial Court Cause No. 30D02-1809-F6-2077 |

**Pyle, Judge.**

# Statement of the Case

Brandon Shockley ("Shockley") appeals, following a jury trial, his convictions for Level 6 felony auto theft[1] and Level 6 felony resisting law enforcement.[2] Shockley argues that the trial court: (1) erred by admonishing the jury rather than declaring a mistrial when Shockley objected to one of the State's witnesses' testimony regarding Rule 404(b) evidence; and (2) violated his right against self-incrimination when it required him to show his tattoos during trial. Concluding that Shockley has waived both arguments by: (1) failing to object to the admonishment and request a mistrial; and (2) raising a different argument on appeal than made to the trial court below, we affirm his convictions.

We affirm.

# Issues

1. Whether Shockley has waived his argument that the trial court erred by admonishing the jury regarding Trial Rule 404(b) evidence rather than declaring a mistrial when he failed to object to the admonishment and failed to request a mistrial.

2. Whether Shockley has waived his argument that the trial court violated his right against self-incrimination.

---

[1] IND. CODE § 35-43-4-2.

[2] I.C. § 35-44.1-3-1.

# Facts

On September 5, 2018, Kevin Kiel ("Kiel"), who normally left his Chevy Avalanche parked about 300 feet from his Columbus, Indiana home, noticed that his vehicle was missing. He called the police and reported that his Avalanche had been stolen.

The following day, around 5:30 p.m., Hancock County Sheriff's Department Deputy Dillen Sexton ("Deputy Sexton") was on a routine traffic patrol near U.S. 40 in Hancock County. When Deputy Sexton was at the intersection of 200 South and 700 West, he noticed that the driver of an Avalanche kept looking back at the deputy in his driver's side mirror. Finding the driver's behavior suspicious, Deputy Sexton followed the Avalanche as it pulled into and out of a driveway. As the Avalanche backed out of the driveway, Deputy Sexton noted the license plate number. The deputy, who saw that a white male was driving the Avalanche, ran the plate number. Because the Avalanche had left Deputy Sexton behind, Deputy Sexton drove on a county road in order to catch up to the Avalanche; when he did, Deputy Sexton was driving in the opposite direction as the Avalanche. As the deputy crossed paths with the Avalanche, he saw two white males in the car, but he "focused on" the driver because he had been the person who had previously tried to "avoid" the deputy. (Tr. Vol. 2 at 133). Deputy Sexton could see that the driver, who was later identified as Shockley, had a "scrawny build" and a thin-looking beard and a mustache. (Tr. Vol. 2 at 133). Specifically, the deputy noted that the driver's facial hair "look[ed] like someone who struggle[d] a little bit to grow a beard."

(Tr. Vol. 2 at 133). Deputy Sexton turned his vehicle around and got behind the Avalanche, which sped away at "a high rate of speed." (Tr. Vol. 2 at 134). At that time, Deputy Sexton received information that the Avalanche had been stolen. He then "activated his emergency lights and sirens" and "engaged in a pursuit." (Tr. Vol. 2 at 134).

[5] Shockley drove the Avalanche onto Brookville Road and drove through stop signs and stop lights as he headed towards Marion County. Traffic was "substantially heavy[,]" and Shockley swerved in and out of traffic and crossed into oncoming traffic to get around other cars. (Tr. Vol. 2 at 138). Shockley's speed reach over 100 miles per hour. As Shockley drove near the intersection of Brookville Road and German Church Road, Deputy Sexton noticed the passenger in the Avalanche throw a plastic bag out the window. Another deputy later picked up the bag from the side of the road and found unused syringes.

[6] As the high-speed chase continued onto Shadeland Avenue, the State Police joined the pursuit. Shockley eventually drove the Avalanche onto an exit ramp and "spun out[.]" (Tr. Vol. 2 at 144). As Deputy Sexton turned his vehicle around to get to the Avalanche, a State Trooper struck Deputy Sexton's vehicle. The deputy's vehicle and the trooper's commission were damaged, and the officers were unable to continue their pursuit of the Avalanche.

[7] Later that evening, the Avalanche was recovered near Shadeland Avenue and 13th Street in Indianapolis. When an officer processed the car, he found various

items, including a cell phone that did not belong to Kiel. Deputy Sexton obtained a search warrant to search the cell phone. During the search, the deputy found a Facebook profile belonging to Shockley, and the photograph on the profile was the same person that Deputy Sexton had seen driving the Avalanche. Deputy Sexton then ran Shockley's name through the BMV and obtained a photograph, which confirmed that Shockley was the person whom the deputy had seen driving the stolen vehicle.

[8] The State charged Shockley with Level 6 felony auto theft, Level 6 felony resisting law enforcement, and Level 6 felony possession of a syringe. Shortly thereafter, Shockley was also charged in Hendricks County for crimes that were alleged to have been committed on September 4, 2018 ("Hendricks County case").[3] These charges included, among others, Level 6 felony auto theft, Level 2 felony burglary with a deadly weapon, and Level 6 felony attempted residential entry.

[9] Prior to trial, the parties filed multiple motions, the majority of which related to potential evidence to establish Shockley's identity in this case. The State filed a notice of 404(b) evidence, stating that it sought to introduce evidence that Shockley had recently been charged in other counties with auto theft.[4] The

---

[3] These charges were filed under cause number 32D02-1810-F2-22.

[4] Shockley was also charged in Morgan County, under two different cause numbers, for Level 6 felony auto theft and Level 6 felony resisting law enforcement, which were alleged to have occurred on September 12, 2018. Evidence from these causes were not discussed in this case.

State asserted that this evidence could assist the jury because identity would be an issue at trial. Specifically, the State sought to introduce evidence from Shockley's Hendricks County case, which was alleged to have occurred the day before Shockley had stolen Kiel's vehicle. In the Hendricks County case, Debra Koeberlein ("Koeberlein") and Paul Martinez ("Martinez") were two of the alleged victims. Both Koeberlein and Martinez saw Shockley—who was covered in tattoos—during the commission of his alleged Hendricks County crimes. Koeberlein saw Shockley in person, and Martinez saw him on his home's surveillance video. The State sought to present testimony from Koeberlein and Martinez as additional identification evidence that Shockley was the perpetrator in this Hancock County case. More specifically, the State sought to provide evidence that would place Shockley near the scene where Kiel's vehicle was stolen.[5]

[10] The State also filed a motion for an examination of Shockley during the trial. In this examination motion, the State asserted that "during the investigation in this cause[,]" it had obtained "photographs depict[ing] a male suspect believed to be [Shockley] with distinct tattoos on [his] back[,]" and it sought to prove identification with admission of this evidence. (App. Vol. 2 at 38). The State further stated that because it expected Shockley to question the identification of the suspect, it sought an order to have Shockley "bare his back during the trial

---

[5] Allegedly, on September 4, 2018, the day before Shockley stole Kiel's vehicle, Shockley went into Koeberlein's garage, waived a gun at Koeberlein, and eventually stole her husband's Tacoma truck. This truck was then found in a field across the way from Kiel's driveway.

for the jurors to view." (App. Vol. 2 at 39). The State cited Indiana Trial Rule 35[6] and *Flynn v. State*, 412 N.E.2d 284 (Ind. Ct. App. 1980) to support its request for an examination. Although not specifically described in the State's motion, the photographs depicting a shirtless and tattooed Shockley were part of the evidence obtained in Shockley's pending Hendricks County case.

[11] Shockley filed an objection to the State's motion for a physical examination, arguing that the evidence was prejudicial and not relevant because it came from an investigation in a different cause. He also filed a motion to suppress the evidence found in Kiel's Avalanche and any evidence obtained from the Hendricks County case, including any evidence that displayed a tattoo. Shockley also sought to suppress some of the State's witnesses, including Koeberlein and Martinez, because they did not have any knowledge of the facts regarding the charges against him in this case. Shockley also filed a motion in limine, seeking to exclude any evidence that he had prior convictions or pending charges.

---

[6] Trial Rule 35(A) provides:

> **Order for Examination.** When the mental or physical condition (including the blood group) of a party, or of a person in the custody or under the legal control of a party, is in controversy, the court in which the action is pending may order the party to submit to a physical or mental examination by a suitably licensed or certified examiner or to produce for examination the person in his custody or legal control. The order may be made only on motion for good cause shown and upon notice to the person to be examined and to all parties and shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made.

[12]     The trial court held a two-day jury trial in December 2018. Before commencing the trial, the trial court resolved some pending discovery issues, and the parties argued their motions to the trial court. The trial court noted that the pending motions, especially the State's 404(b) motion and examination motion and Shockley's motion to suppress the Hendricks County evidence and witnesses, were related. As for its 404(b) motion, the State argued that any potential evidence regarding Shockley's actions in Hendricks County were being offered to prove the essential element of identification and that the evidence was intrinsic to the facts of the underlying charges in this case. The State indicated that it was going to restrict Koeberlein's and Martinez's testimony to identity only and that they would not specifically testify regarding the pending charges against Shockley in the Hendricks County case. For example, the State indicated that Koeberlein would not testify that Shockley had pointed a gun at her when he was in her garage and that Martinez would not testify that Shockley had tried to break into his house. The State also indicated that it would offer photographs taken from Martinez's surveillance video and would redact the photos in which Shockley could be seen holding a gun. Shockley argued that the State's proposed identification evidence was suggestive and could unfairly prejudice him or confuse the jury. The trial court ultimately granted the State's 404(b) and examination motions and denied Shockley's motion to suppress. When doing so, the trial court instructed and cautioned the State as follows:

> I want the State to be aware that . . . they must submit to me an
> instruction uh – for Final Instructions, this is for identity

purposes only. And . . . I'm instructing the State to be very circumspect about the evidence that's submitted, such that you don't teeter over the line to where it is so prejudicial it exceeds its probative value, because uh – if we go too far down that road a uh – defense motion regarding how far we're going down that road may be well taken . . . I don't want to go into an area where we are trying this gentleman on misconduct based upon the allegations of what may have occurred in another county. I want it to be based on identity issues.

(Tr. Vol. 2 at 77-78).

[13] During the trial, the State presented testimony and evidence to establish the identity of Shockley as the perpetrator. Deputy Sexton testified to the facts above and identified Shockley as the person who had been driving the stolen Avalanche. The deputy also testified that when he saw Shockley's Facebook profile photo on his cell phone, he was 100% positive that it was the same person who had been driving the stolen car. Additionally, the deputy testified that Shockley's BMV photo confirmed that he had been the driver of the stolen Avalanche.

[14] The State also presented identification testimony from Koeberlein and Martinez. Koeberlein identified Shockley as the man that she had seen in her garage on September 4, 2018. She testified that when she saw him on that day, he was wearing basketball shorts, was not wearing a shirt, and was covered in tattoos to the extent that it almost looked like a shirt. Additionally, Koeberlein testified that after she had seen Shockley in her garage, she felt scared, went into her house, and called the police. She then heard her husband's Tacoma

truck starting and a loud banging noise and then saw the garage door come off the hinges and the truck flying down her driveway. A sheriff deputy testified that the Tacoma truck was found a few days later in Bartholomew County in a field that was across the road from Kiel's driveway where his Avalanche had been stolen.

[15] Martinez testified that he had a home surveillance system that recorded videos of the outside of his house. He testified that his September 4, 2018 video showed that a shirtless man, who was wearing shorts and "had a lot of tattoos on his back[,]" was looking in Martinez's house window. (Tr. Vol. 2 at 185). The State introduced four photographs of a shirtless Shockley as he stood outside Martinez's house. (State's Exs. 2, 18, 20, 21). These photographs revealed that Shockley's torso and arms were covered in tattoos. State's Exhibit 18 shows Shockley standing on the porch while holding the handle of Martinez's front door, while Exhibits 2 and 20 show Shockley standing on the porch and peering into Martinez's house window. One of the window-peering photos, State's Exhibit 20, reveals Shockley's large back tattoos, which include some sort of large drawing covering the middle of his back and the word "PRIDE" in a very large font underneath the drawing tattoo.[7] The fourth photo, Exhibit 21, is a close-up photo these two back tattoos.

---

[7] The presentence investigation report indicates that Shockley had the words "white pride" tattooed on his back. The word "white" is not visible in the photographic exhibits admitted at trial.

[16] Before introducing Exhibit 2 into evidence, the State asked Martinez to describe the photograph, and he responded that "it's a man who was trying to break in the house." (Tr. Vol. 2 at 186). The prosecutor responded, "Hold on – hold on, Sir." (Tr. Vol. 2 at 186). Shockley objected, stating that this was "exactly what we said this purpose – There's one identity that their [sic] trying to show" and that "[t]his isn't what we talked about." (Tr. Vol. 2 at 186). The trial court stated that Martinez's response was "unresponsive" and beyond the scope of question, and it informed the parties that it would "instruct the Jury to disregard" the response. (Tr. Vol. 2 at 187). The trial court then admonished the jury as follows: "Ladies and gentlemen of the jury if you'll disregard the last answer given by uh – the witness. You're not to consider that in deliberations of this case." (Tr. Vol. 2 at 187). Shockley neither objected to the trial court's offered admonishment nor sought a mistrial. Nor did Shockley object to State's Exhibits 2, 18, 20, or 21 when the State moved to admit them into evidence.

[17] Thereafter, the State requested to have Shockley "display" his "body art." (Tr. Vol. 2 at 202). Shockley objected, arguing that the Hendricks County case "ha[d] nothing to do with" or was not relevant to the current Hancock County case and that "[w]hoever this person is, the suspects in this case, there's been no evidence that they have a tattoo." (Tr. Vol. 2 at 202). The trial court overruled Shockley's objection. The trial court instructed Shockley to remove his shirt so the jury could "see [his] front and back" and then told him to put his shirt back on. (Tr. Vol. 2 at 202).

[18]     The State proposed a jury instruction regarding the 404(b) evidence that had been introduced. Shockley objected to the instruction, arguing that there had been "no wrongful conduct" where a witness had testified that the person in the photographs was at the door and looking in the window but had not taken anything. (Tr. Vol. 3 at 28). The State responded that it was "kind of at a loss" that Shockley was objecting to the 404(b)-limiting instruction. (Tr. Vol. 3 at 29). The prosecutor agreed that looking in the window was not the bad act but noted that Koeberlein had testified and had identified him as the person she saw immediately before her husband's truck was taken. The prosecutor stated that the proposed instruction was "a protection" for Shockley and that it would inform the jury that it was to consider the evidence only for the purpose of identifying Shockley. (Tr. Vol. 3 at 29). The trial court agreed with the State that the instruction was necessary for Shockley's protection and to inform the jury that any evidence of wrongful conduct from the other incidents were to be considered only for identification purposes. In its final jury instructions, the trial court instructed the jury regarding the 404(b) evidence as follows: "Evidence has been introduced that the Defendant was involved in wrongful conduct other than those charged in the information. This evidence has been received solely on the issue of the Defendant's identity. This evidence should be considered by you only for that limited purpose." (Tr. Vol. 3 at 61).

[19]     The jury found Shockley guilty of Level 6 felony auto theft and Level 6 felony resisting law enforcement and not guilty of Level 6 felony unlawful possession of a syringe. The trial court imposed a two and one-half (2½) year sentence for

Shockley's auto theft conviction and a concurrent two and one-half (2½) year sentence for his resisting law enforcement conviction. Shockley now appeals.

# Decision

[20] Shockley argues that the trial court: (1) erred by admonishing the jury rather than declaring a mistrial when Shockley objected to Martinez's testimony regarding Rule 404(b) evidence; and (2) violated his right against self-incrimination when it required him to show his tattoos during trial. We will review each argument in turn.

## 1. Mistrial

[21] We first address Shockley's mistrial argument regarding Rule 404(b) evidence. "On appeal, a trial judge's discretion in determining whether to grant a mistrial is afforded great deference, because the trial judge 'is in the best position to gauge the surrounding circumstances of an event and its impact on the jury.'" *Mickens v. State*, 742 N.E.2d 927, 929 (Ind. 2001) (internal quotation marks and citation omitted). A mistrial is "an extreme remedy that is justified only when other remedial measures are insufficient to rectify the situation." *Id.*

[22] Indiana Evidence Rule 404(b) provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Ind. Evid. Rule 404(b)(1). However, such evidence may be admitted to prove "motive, opportunity, intent, preparation, plan, knowledge, *identity*, absence of mistake, or lack of accident." Evid. R. 404(b)(2) (emphasis added).

[23] Here, where this case turned on the identification of Shockley, the trial court allowed the State to present Rule 404(b) evidence to help establish Shockley's identity. Shockley does not challenge the trial court's ruling that the State could present this identity evidence. Instead, Shockley argues that the trial court erred when it admonished the jury rather than declaring a mistrial after he had objected to Martinez's testimony.

[24] Shockley, however, has waived appellate review of his argument. *See Brown v. State*, 572 N.E.2d 496, 498 (Ind. 1991) (providing that when an improper argument is alleged to have occurred, the proper procedure is to request an admonishment and, if the alleged error is not corrected, a mistrial). After Shockley objected to Martinez's testimony, the trial court informed the parties that it would admonish the jury to disregard that testimony and then so admonished the jury. Shockley neither objected to the trial court's admonishment nor requested the trial court to declare a mistrial. By failing to do so, he has also failed to preserve his argument on appeal. Accordingly, Shockley has waived his argument that the trial court erred when it did not enter a mistrial that had not been sought.

[25] We recognize that an issue that has been waived by a defendant's failure at trial to properly preserve the error can be reviewed on appeal if the defendant shows that fundamental error occurred. *See Hoglund v. State*, 962 N.E.2d 1230, 1239 (Ind. 2012) ("Failure to object at trial waives the issue for review unless fundamental error occurred."), *reh'g denied*. Here, however, Shockley does not raise a fundamental error argument. Indeed, he does not even acknowledge

that he failed to request a mistrial, thereby leading to an argument of fundamental error. We decline to address an argument not raised, and we will not make such arguments for Shockley. *See Barrett v. State*, 837 N.E.2d 1022, 1030 (Ind. Ct. App. 2005) ("We will not become a party's advocate, nor will we address arguments that are inappropriate, improperly expressed, or too poorly developed to be understood.)

## 2. Tattoos

Lastly, we turn to Shockley's argument that the trial court violated his Fifth Amendment right against self-incrimination when it required him to show his tattoos during trial. As with the prior issue, we conclude that Shockley has waived appellate review of this issue.

"A party may not object to the admission of evidence on one ground at trial and seek reversal on appeal based on a different ground." *Casady v. State*, 934 N.E.2d 1181, 1191 (Ind. Ct. App. 2010) (citing *Malone v. State,* 700 N.E.2d 780, 784 (Ind. 1998)), *reh'g denied*, *trans. denied*. Here, Shockley's objection to the State's request to have him show his tattoos was based on relevancy, not self-incrimination as he now attempts to argue on appeal. Because Shockley objected based on different grounds than he now raises on appeal, he has waived review of his appellate argument. *See, e.g.*, *Hunter v. State*, 72 N.E.3d 928, 932 (Ind. Ct. App. 2017) (holding that grounds for objection not raised at trial are unavailable on appeal), *trans. denied*.

[28] Waiver notwithstanding, "the proscription against compulsory self-incrimination extends only to testimonial or communicative responses not to purely physical tests which make the accused the true source of demonstrative evidence." *Flynn v. State*, 412 N.E.2d 284, 288 n.4 (Ind. Ct. App. 1980). We have held that there was no violation of a defendant's privilege against self-incrimination where the defendant was required to display his tattooed arm for the purpose of substantiating the defendant's identification. *See id.* at 288. *See also Springer v. State*, 372 N.E.2d 466, 472 (Ind. Ct. App. 1978) (holding there was no self-incrimination violation where the defendant was required to stand and display his hands to the jury after two witnesses had testified that the robbery suspect was missing a finger). Given the specific facts of this case and the arguments before us on appeal, we cannot conclude that the trial court erred.

[29] Affirmed.

May, J., and Crone, J., concur.